IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

_____ )        CASE NUMBER: 1:09-CV-00507
                                        )
Richard Ronald Guilmette                )
306 East Silver Oak Drive               )
Enterprise, AL 36330                    )
                                        )
Peter Manual Reis                       )
145 Steel Arm Trail,                    )
Ozark, AL 36360-1161                    )
                                        )
Beverly Jean Grafton                    )
989 County Road 328                     )
Moulton, AL 35650                       )
                                        )
Justin Shepherd                         )
3685 County Road 317                    )
Moulton, AL 35650                       )
                                        )
Leon Russell Keith                      )
7508 Amanda Circle                      )
Huntsville, AL 35802                    )
                                        )
Estate of Danielle Nienajadlo           )
By and through its personal             )
representative Jamie Nienajadlo          )
228 Blossom Drive                       )
Ozark, AL 36360                         )
                                        )
and all others similarly situated,      )
                                        )
v.                                      )
                                        )
KBR, Inc.                               )
601 Jefferson Street                    )
Suite 3400                              )
Houston, Texas 77002                    )
                                        )
Kellogg, Brown & Root Services, Inc.    )
 4100 Clinton Drive                     )
Houston, Texas  77020                   )
_____ )

_____
Kellogg, Brown & Root LLC        )
505 E. Huntland Dr., Suite 100    )
Austin, Texas 78752            )
                                  )
Halliburton Company          )
5 Houston Center              )
1401 McKinney, Suite 24      )
Houston, Texas  77010        )
                                  )
ERKA Ltd.                      )
Cemalpaşa Mah. Toros Cad. 7  )
Sok. Kardelen Apartment No. 20 )
1 Seyhan                        )
Adana, Turkey 01120         )
_____)


## FIRST AMENDED COMPLAINT

1.      This action seeks redress for United States soldiers and others deployed to Iraq and Afghanistan who were poisoned by Kellogg Brown and Root, LLC, KBR, Inc., KBR Services, Inc., Halliburton Company and ERKA Ltd. (hereinafter "Defendants"). These for-profit corporations callously exposed and continue to expose soldiers and others to toxic smoke, ash and fumes.   These exposures are causing a host of serious diseases, increased risk of serious diseases in the future, death and increased risk of death.

## PARTIES

2.      Plaintiff Richard Ronald Guilmette, whose address is 306 East Silver Oak Drive, Enterprise, AL 36330, is a U.S. citizen who is a permanent resident of the State of Alabama.

3.      Plaintiff Peter Manual Reis, whose address is 145 Steel Arm Trail, Ozark, AL 36360-1161, is a U.S. citizen who is a permanent resident of the State of Alabama.

4.      Plaintiff Beverly Jean Grafton, whose address is 989 County Road 328, Moulton, AL 35650, is a U.S. citizen who is a permanent resident of the State of Alabama.

5.      Plaintiff Justin Shepherd, whose address is 3685 County Road 317, Moulton, AL 35650, is a U.S. citizen who is a permanent resident of the State of Alabama.

6.      Plaintiff Leon Russell Keith, whose address is 7508 Amanda Circle, Huntsville, AL 35802, is a U.S. citizen who is a permanent resident of the State of Alabama.

7.      Plaintiff Jamie Nienajadlo, surviving spouse of Danielle Nienajadlo, deceased, is a U.S. citizen who is a permanent resident of the State of Alabama. His address is 228 Blossom Drive, Ozark, AL 36360-1161.

8.      Plaintiffs John and Jane Does 1-1000 are the Class of persons who Defendants have subjected to toxic exposures sufficient to cause physical injury.  The Class includes soldiers and employees of all nationalities who work for government contractors.  The Class members are so numerous that joinder of all members of the class is impracticable.

9.      Defendant KBR, Inc. is a publicly-traded corporation with headquarters located at 601 Jefferson Street, Suite 3400, Houston, Texas 77002.  Defendant KBR was incorporated in Delaware on March 21, 2006. Defendant KBR does business throughout the United States and the rest of the world.  Defendant KBR acted at all times relevant to

this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant KBR."  Defendant KBR regularly transacts business in the State of Alabama and is subject to this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

10.     Defendant Kellogg, Brown & Root LLC is a publicly traded corporation with headquarters located at 505 E. Huntland Dr., Suite 100, Austin, Texas 78752. Defendant Kellogg, Brown & Root LLC does business throughout the United States and the rest of the world.  Defendant Kellogg, Brown & Root LLC acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg, Brown & Root LLC."  Defendant Kellogg, Brown & Root LLC regularly transacts business in the State of Alabama. Defendant Kellogg, Brown & Root LLC is subject to this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

11.     Defendant Kellogg, Brown & Root Services, Inc. is a publicly traded corporation with headquarters located at 4100 Clinton Drive, Houston, Texas 77020. Defendant Kellogg, Brown & Root Services, Inc. does business throughout the United States and the rest of the world.  Defendant Kellogg, Brown & Root Services, Inc. acted at all times relevant to this action through individual agents and employees, who are hereinafter subsumed within the term "Defendant Kellogg Brown & Root Services, Inc." Defendant Kellogg, Brown & Root Services, Inc. regularly transacts business in the State of Alabama.  Defendant Kellogg, Brown & Root Services, Inc. is subject to this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

12.     Defendant Halliburton is a publicly traded corporation with headquarters located at 1401 McKinney, Suite 24, Houston, Texas 77010.  Defendant Halliburton was formed and incorporated under the laws of Delaware.  Defendant Halliburton does

business throughout the United States and the rest of the world.  Defendant Halliburton

acted at all times relevant to this action through individual agents and employees, who

are hereinafter subsumed within the term "Defendant Halliburton."  Defendant

Halliburton regularly transacts business in the State of Alabama.  Defendant Halliburton

is subject to this Court's jurisdiction under 28 U.S.C. § 1332.

13.     Defendant ERKA Ltd. is a Turkish company with headquarters located at

Cemalpaşa Mah. Toros Cad. 7. Sok. Kardelen Apartment No. 20, 1 Seyhan, Adana,

Turkey 01120, with branch offices around the world, including LSA Anaconda, Iraq (also

known as Balad Air Force Base). Defendant ERKA Ltd. is a general contractor that

provides services in construction, maintenance and upgrades, mechanical and electrical

installations, leasing heavy machinery, procurement, transportation and sub-contracting.

Defendant ERKA Ltd. does business for the United States military and conducts business

throughout the rest of the world. Defendant ERKA Ltd. acted at all times relevant to this

action through individual agents and employees, who are hereinafter subsumed with the

term "Defendant ERKA Ltd." Defendant ERKA Ltd. is subject to this Court's

jurisdiction pursuant to 28 U.S.C. §1332.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1332.

15.     Venue is proper pursuant to 28 U.S.C. § 1391 et seq.

## FACTUAL ALLEGATIONS

16.     Defendants were paid millions of dollars by the United States government

to dispose of waste on bases and camps in Iraq and Afghanistan. Defendants promised to

design methods for and dispose of all waste in a fashion that minimized safety risks, environmental effects, and human exposures to toxic fumes.

17.     Defendants, motivated by financial gain, ignored their contractual obligations, and burned vast quantities of unsorted waste in enormous open air burn pits with no safety controls.  This misconduct began in 2003 and continues unabated to date.

18.     Defendants' burn pits are so large that tractors are used to push waste onto them and the flames shoot hundreds of feet into the sky.  Every type of waste imaginable was and is burned on these pits, including trucks, tires, lithium batteries, Styrofoam, paper, wood, rubber, petroleum-oil-lubricating products, metals, hydraulic fluids, munitions boxes, medical waste, biohazard materials (including human corpses), medical supplies(including those used during smallpox inoculations), paints, solvents, asbestos insulation, items containing pesticides, polyvinyl chloride pipes, animal carcasses, dangerous chemicals, and  hundreds of thousands of plastic water bottles.

19.     Burning plastics emit dioxins, which are known to cause cancer.  Burning pesticides have similar results. Mixing types of solid waste and heavy metals with burning chemicals releases multiple toxic gases and particulates that can interact in an infinite variety of ways and cause many different toxicities and injuries.

20.     The thick smoke from the enormous burn pits filled with smoke and haze the nearby living quarters of American soldiers and contractors accompanying the force.

21.     At times, the smoke reduced visibility to only a few yards.

22.     The burn pit flames were often colored blue or green from the burning chemicals.

23.     The smells emanating from the pits were noxious.

24.     In some instances, the burn pit smoke was so bad that it interfered with the military mission.  For example, the military located at Camp Bucca, a detention facility, had difficulty guarding the facility as a result of the smoke.

25.     Defendants designed burn pits that released known carcinogens and respiratory sensitizers into the air, created a severe health hazard for Plaintiffs, and caused Plaintiffs' acute and chronic health problems.

26.     Defendants operated burn pits that released known carcinogens and respiratory sensitizers into the air, creating a severe health hazard for Plaintiffs and all people located near the burn pits, potentially causing both acute and chronic health problems.

27.     Defendants knew or should have known that the design of the burn pits created hazardous conditions for the health of Plaintiffs, American soldiers and contractors.

28.     Defendants knew or should have known that the operation of the burn pits created hazardous conditions for the health of Plaintiffs, American soldiers and contractors.

29.     Defendants knew or should have known that operating poorly-designed open air burn pits jeopardized the health and safety of Plaintiffs and thousands of American soldiers and contractors deployed to Iraq and Afghanistan.

30.     Defendants were on notice of the harms being caused by the burn pits. Defendants were put on notice by the military, the media, and by their own employees. Reasonable discovery will show substantial internal discussion of the harms.

31.     The military did not prevent Defendants from disposing of the wastes in a safe manner that would not have harmed Plaintiffs.  The military wanted Defendants to solve the burn pit problems.

32.     Defendants willfully failed to use safer, alternative means to achieve a safer method of waste disposal.

33.     Defendants' misconduct injured Plaintiffs and the Class Members.

34.     Plaintiff Richard Ronald Guilmette was deployed to Afghanistan with the U.S. Army and was stationed at Kandahar from March 31, 2004 to March 31, 2005. For a year, Plaintiff Guilmette lived in a tent close to a burn pit. Prevailing winds blew the thick black smoke and toxic fumes from the burn pit over the camp, and the smoke hung in the tent where Plaintiff Guilmette lived and slept. He noted the constant presence of a horrible smell of burning plastics.

35.     As a direct result of exposure to the toxic emissions from the burn pit, in July 2004, Plaintiff Guilmette developed severe chest pain. Thereafter, also as a direct result of exposure to the toxic emissions from the burn pit, Plaintiff Guilmette began to experience extreme, uncontrollable diarrhea, which greatly embarrassed and concerned him, and a constant cough with black phlegm and mucus.

36.     As a direct result of exposure to toxic emissions from the burn pit, Plaintiff Guilmette has suffered from asthma, sleep apnea, and severe, debilitating migraine headaches. He is dependent upon a breathing machine. He has been treatd with high doses of steroids, but still suffers from low pulmonary function. He has been treated aggressively for his migraine headaches but continues to frequently be incapicated from them. Plaintiff Guilmette has lost mental functioning and experienced significant memory

loss. He is currently on disability for mental impairment. Plaintiff Guilmette's conditions are a direct result of his exposure to the toxic emissions from the burn pits.

37.     Plaintiff Peter Manuel Reis was deployed to Balad Air Force Base from 2003 to 2009.

38.     Plaintiff Reis was constantly exposed to the hazardous toxins emitted by burn pits designed and operated by Defendants.

39.     As a direct result of his exposure to the burn pits, Plaintiff Reis suffers medical problems.

40.     Plaintiff Beverly Grafton was deployed to Balad Air Force Base with KBR from March 2004 to March 2008.

41.     Plaintiff Grafton was constantly exposed to the hazardous toxins emitted by burn pits designed and operated by Defendants.

42.     As a direct result of her exposure to the burn pits, Plaintiff Grafton suffers from respiratory problems and a bleeding stomach lining.

43.     Plaintiff Justin Shepherd was deployed to Iraq.

44.     Plaintiff Shepherd was constantly exposed to the hazardous toxins emitted by burn pits designed and operated by Defendants.

45.     As a direct result of his exposure to the burn pits, Plaintiff Shepherd suffers from medical problems.

46.     Plaintiff Leon Russell Keith was a former KBR employee. He was at Balad Air Force Base from March 2006 to June 2007 and at Basra from April 2008 to May 2009. He worked as a paramedic.

47.     Plaintiff Keith was constantly exposed to the hazardous toxins emitted by burn pits designed and operated by Defendants.

48.     As a result of his exposure to the burn pits, Plaintiff Keith suffers from pulmonary problems and Parkinson's Disease.

49.     Plaintiff Danielle Nienajadlo served in the United States Army for thirteen years.  She deployed to Balad in April 2008, working as a vehicle mechanic until she was evacuated for medical reasons in July 2008.

50.     Staff Sergeant Nienajadlo was regularly exposed to the toxic emissions from the burn pits in Balad.  As a direct result of her exposure, she suffered weight loss, nausea, diarrhea, fatigue, had difficulty breathing, and was diagnosed with acute myelogenous leukemia on July 26, 2008.

51.     Decedent Danielle Nienajadlo died from acute myelogenous leukemia on March 20, 2009.

52.     Jamie Nienajadlo is the surviving spouse of decedent Danielle Nienajadlo. She is also survived by three minor children.

53.     Plaintiffs reasonably fear the long term effects of constant exposure to thick toxic smoke and will require medical monitoring of their health for the foreseeable future.

54.     Plaintiffs have suffered severe emotional distress as a result of prolonged exposure to hazardous smoke and fumes and their fears and uncertainty regarding their own health risks caused by these exposures.  Plaintiffs are aware that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious and potentially fatal diseases, and in some

cases have died from the physical injuries and diseases caused by exposure to hazardous smoke and fumes.

## CLASS ALLEGATIONS

55.     Plaintiffs satisfy all of the conditions for a class action under federal law.

56.     Counsel is experienced in bringing and defending class actions and will adequately represent the class interests.

57.     This action should be certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1)(A) because the lack of a class could lead to inconsistent or varying adjudication with respect to individual members which would establish incompatible standards of conduct for the defendants.

58.     This action should be certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1)(B) because adjudication with respect to individual Plaintiffs would be dispositive of the interests of the other putative Class Members.

59.     This action should be certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.

60.     There should be at least one class certified. The class should be defined as those persons who 1) were exposed to the actions of Defendants in Iraq or Afghanistan during the years 2003 to the present, and 2) suffered, or have a basis for fear that they may in the future suffer, physical injury as a result.  There are at least an estimated 100,000 individuals who were exposed to the actions of Defendants.

## COUNT ONE:
## NEGLIGENCE

61.     All allegations and facts in paragraphs 1-60 are hereby incorporated by reference.

62.     Defendants owed a duty to design and operate the burn pits in a safe manner.

63.     Defendants negligently failed to design and operate the burn pits.

64.     Plaintiffs suffered serious physical harms from exposures to the burn pits.

65.     Defendants' negligence was the proximate cause of harm to all Plaintiffs.

## COUNT TWO: BATTERY

66.     All allegations and facts in paragraphs 1-65 are hereby incorporated by reference.

67.     Defendants contaminated the air by failing to design and operate the burn pits in a law-abiding and safe manner.  Defendants knew that Plaintiffs would come into contact with the smoke, fumes and haze from the burn pits and that they would not consent to such contact.

68.     Plaintiffs did not consent to contact with smoke, fumes and haze contaminated with numerous unsafe substances from the burn pit.

69.     Defendants' actions were unlawful and Defendants acted in willful disregard of Plaintiffs' right to be free of exposure to and contact with hazardous substances.

## COUNT THREE: NUISANCE

70.     All allegations and facts in paragraphs 1-69 are hereby incorporated by reference.

71.     Plaintiffs had a right to be free from irritating and hazardous smoke from improperly designed and operated open air burn pits and to be free of the hazards that arose when chemicals, plastics, heavy metals, and medical and other waste are burned on an improperly-sited open air burn pit.

72.     Defendants substantially and unreasonably interfered with those rights when they improperly designed and operated open air burn pits.

73.     Plaintiffs suffered physical injuries from the illegal and hazardous design and operation of the open air burn pits.

74.     Defendants' actions are the proximate cause of Plaintiffs' injuries.

**COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

75.     All allegations and facts in paragraphs 1-74 are hereby incorporated by reference.

76.     Plaintiffs have been diagnosed with injuries as a result of Defendants' misconduct in exposing Plaintiffs to smoke, haze and fumes containing hazardous substances through the negligent design and operation of the open air pits.

77.     Plaintiffs have suffered physical harm and severe emotional distress due to these injuries.

78.     Plaintiffs have suffered severe emotional distress as a result of the prolonged exposure to hazardous smoke and fumes.  This distress has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by these exposures, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, been diagnosed with

serious and potentially fatal diseases, and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

79.     Defendants' negligent conduct is the cause of the Plaintiffs' emotional distress.

## COUNT FIVE: OUTRAGE/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80.     All allegations and facts in paragraphs 1-79 are hereby incorporated by reference.

81.     Plaintiffs have suffered from extreme stress and severe emotional distress due to Defendants' outrageous actions.

82.     Defendants' conduct was intentional and reckless and Defendants knew or should have known that injury and emotional distress would likely result from their conduct.

83.     Defendants' conduct in operating the burn pits was outrageous, intolerable and certainly offends generally accepted standards of decency and morality.  Defendants' conduct caused Plaintiffs' severe emotional distress. Defendants' conduct in designing and operating burn pits and subjecting Plaintiffs to constant exposure to smoke, haze and fumes contaminated with hazardous substances.  Given that Defendants inflicted these harms on Plaintiffs when they were stationed overseas serving our nation, the misconduct is so outrageous in character and so extreme in degree as to be utterly intolerable in a civilized community.  Defendants knew or had reason to know that their actions would create a risk of harm and they deliberately proceeded to act, or failed to act, in conscious disregard of that risk of harm.

84.    Plaintiffs have suffered severe emotional distress from knowing that they were constantly exposed to thick smoke, fumes and haze which contained numerous chemicals and hazardous substances.

85.    Plaintiffs' severe emotional distress which resulted from the prolonged exposure to hazardous smoke and fumes has been exacerbated by Plaintiffs' fears and uncertainty regarding their own health risks caused by this exposure, and by Plaintiffs' awareness that many other American soldiers and other residents of the military bases and camps have become seriously ill, have been diagnosed with serious or fatal diseases and in some cases have died from the physical injuries and diseases caused by the exposure to hazardous smoke and fumes.

## COUNT SIX: WILFUL AND WANTON CONDUCT

86.    All allegations and facts in paragraphs 1-85 are hereby incorporated by reference.

87.    Defendants owed Plaintiffs a duty to design and provide safe waste disposal services. Defendants breached that duty and proximately and directly caused harm to Plaintiffs.

88.    Defendants were conscious of their conduct in failing to adequately supply safe waste disposal services.

89.    Defendants were conscious from their knowledge of the surrounding circumstances and existing conditions that their conduct would naturally and probably result in injury to Plaintiffs.

90.    Defendants demonstrated either a deliberate intent to harm Plaintiffs, or an utter indifference to and conscious disregard for the welfare of Plaintiffs.

## COUNT SEVEN: NEGLIGENT HIRING, TRAINING AND SUPERVISION

91.     All allegations and facts in paragraphs 1-90 are hereby incorporated by reference.

92.     Defendants had a duty to hire competent personnel, and properly train and supervise them in the design and operation of the burn pits.

93.     Defendants failed to fulfill these duties.

94.     Defendants' wholesale failure to ensure it hired, trained and supervised personnel able to design and operate an adequate waste disposal system was the direct and proximate cause of injury to Plaintiffs.

## COUNT EIGHT:  BREACH OF DUTY TO WARN

95.     All allegations and facts in paragraphs 1-93 are hereby incorporated by reference.

96.     Defendants had a duty to warn Plaintiffs when Defendants learned there were safety issues arising from the design and operation of the open air burn pits.

97.     Defendants failed to warn Plaintiffs, and this failure was the direct and proximate cause of injury to Plaintiffs.

## COUNT NINE: MEDICAL MONITORING

98.     All allegations and facts in paragraphs 1-97 are hereby incorporated by reference.

99.     Plaintiffs have been exposed to dangerous levels of known and unknown hazardous substances in the air as a direct result of the misconduct of Defendants.

100.    This exposure has resulted in serious physical health problems for Plaintiffs.

101.    Plaintiffs' exposure to known and unknown hazardous substances is a direct result of Defendants' negligence in the design and operation of the pits.

102.    Plaintiffs face an increased risk of contracting future diseases as a direct and proximate result of the prolonged and constant exposure to thick smoke, fumes and haze which contained numerous hazardous substances.

103.    Plaintiffs have a reasonable fear of contracting a future disease as a direct result of the exposure to hazardous substances caused by Defendants.

### COUNT TEN:  FUTURE MEDICAL EXPENSES

104.    All allegations and facts in paragraphs 1-103 are hereby incorporated by reference.

105.    Plaintiffs have been exposed to dangerous levels of unknown hazardous substances in the air as a direct result of the misconduct of Defendants.

106.    This exposure has resulted in physical health problems for Plaintiffs.

107.    Plaintiffs' exposure to numerous hazardous substances is a direct result of Defendants' negligence and intentionally reckless conduct.

108.    Plaintiffs' injuries will result in Plaintiffs incurring future medical expenses, both as a result of physical injuries and as a result of an increased risk of contracting future diseases as a direct and proximate result of Defendants' misconduct.

109.    Plaintiffs will demonstrate the likely cost of such future medical treatment and monitoring at trial.

## COUNT ELEVEN:  BREACH OF CONTRACT:  THIRD PARTY BENEFICIARIES

110.    All allegations and facts in paragraphs 1-109 are hereby incorporated by reference.

111.    Defendants entered into contractual agreements with the United States Department of Defense.

112.    Defendants had a duty under these contracts to design and operate a safe waste disposal system that operated without exposing United States Military personnel and contractors accompanying the force to hazardous substances.

113.    Plaintiffs were the intended Third Party Beneficiaries of these contracts.

114.    Defendants breached their obligations under these contracts by failing to design and operate a proper waste disposal system that met the terms of the contract, and the military standards incorporated by reference in the contract.

115.    Plaintiffs were injured by exposure to hazardous substances from the waste burn pits designed and operated by Defendants in breach of Defendants' contractual obligations.

116.    Plaintiffs' injuries were proximately caused by Defendants' breaches of their contractual obligations.

## COUNT TWELVE: WRONGFUL DEATH FOR THE ESTATE OF DANIELLE NIENAJADLO

117.    All allegations and facts in paragraphs 1-116 are hereby incorporated by reference.

118.    Plaintiff Jamie Nienajadlo as Administrator of the Estate of decedent Danielle Nienajadlo, is authorized to bring this wrongful death action against Defendants on behalf of the decedent's estate and heirs.

119.    Danielle Nienajadlo's illness and death were proximately caused by Defendants' wrongful acts.  Defendants caused the illness and death of Danielle Nienajadlo by exposing her to hazardous substances and chemicals.

120.    Plaintiff Estate of Danielle Nienajadlo, acting by and through her personal representative and on behalf of her heirs, seeks damages for the wrongful death of decedent Danielle Nienajadlo, who died as a result of the illness she contracted from her prolonged and repeated exposure to extremely hazardous substances.  This exposure was the direct result of Defendants' reckless, negligent and knowingly wrongful actions.

121.    As a proximate result of Defendants' negligence, recklessness and wrongful acts, Danielle Nienajadlo's heirs have suffered financial and emotional losses.

122.    Defendants' wrongful conduct not only caused Ms. Nienajadlo's death, but harmed thousands of U.S. soldiers who were exposed to the toxic fumes from the burn pits.  Defendants, who received millions of dollars to safely dispose of waste for the military, breached their obligations to the United States government, and acted with utter indifference to the welfare of Americans serving and working in Iraq.  As a direct result of Defendants' misconduct, servicemembers and contractor personnel have suffered several fatalities, a host of serious diseases, increased risk of serious diseases in the future, and increased risk of death.

123.    Defendants' wrongful and outrageous conduct warrants punitive damages in an amount sufficient to strip them of profits earned by exposing soldiers to toxic chemicals, and deter them from endangering American servicemembers in the future.

**JURY DEMAND**

Plaintiffs request a Jury Trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  Award Plaintiffs monetary damages to compensate each Plaintiff for his or her physical injuries, emotional distress, fear of future disease, and need for continued medical treatment and monitoring;

B.  Award Plaintiffs punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant, wanton and outrageous misconduct and callous disregard and utter indifference to the welfare of Americans serving and working in Iraq and Afghanistan, who depend on Defendants to properly and safely dispose of various forms of waste and who depend on Defendants not to create hazardous conditions and not to release toxins into the air;

C.  Award attorney's fees and costs to Plaintiffs for legal services provided in the pursuit of this suit; and,

D.  Grant such additional and further relief as the Court deems just and proper.

Respectfully submitted,

_____/s_____
Susan L. Burke
Burke O'Neil LLC
1000 Potomac Street
 Suite 150
Washington D.C 20007
(202) 232-5504
(202) 232-5513 (fax)
sburke@burkeoneil.com
*Lead Counsel for all MDL Plaintiffs*


COPELAND, FRANCO, SCREWS &
GILL, P.A.
P.O. Box 347
Montgomery, AL 36101-0347
*Local Counsel for Alabama Plaintiffs*

Dated:  December 21, 2009