# Exhibit B

No. 09-1313

# In the Supreme Court of the United States

HAIDAR MUHSIN SALEH, ET AL., PETITIONERS

*v.*

TITAN CORPORATION, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

NEAL KUMAR KATYAL
 *Acting Solicitor General
  Counsel of Record*
TONY WEST
 *Assistant Attorney General*
EDWIN S. KNEEDLER
 *Deputy Solicitor General*
LEONDRA R. KRUGER
 *Acting Deputy Solicitor
  General*
MELISSA ARBUS SHERRY
 *Assistant to the Solicitor
  General*
MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
 *Attorneys*

 *Department of Justice
 Washington, D.C. 20530-0001
 SupremeCtBriefs@usdoj.gov
 (202) 514-2217*

**QUESTIONS PRESENTED**

1.  Whether state-law tort claims brought against civilian contractors arising from alleged abuse and mistreatment sustained by Iraqi nationals detained at the Abu Ghraib prison complex in Iraq are preempted by federal law.

2.  Whether claims of torture and other war crimes can be brought against private actors under the Alien Tort Statute, 28 U.S.C. 1350.

(I)

**TABLE OF CONTENTS**

Page

Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**TABLE OF AUTHORITIES**

Cases:

*Abdullahi* v. *Pfizer, Inc.*, 562 F.3d 163 (2d Cir. 2009),
cert. denied, 130 S. Ct. 3541 (2010) . . . . . . . . . . . . . . . . 21

*Al-Quraishi* v. *Nakhla*, 728 F. Supp. 2d 702
(D. Md. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Al Shimari* v. *CACI Premier Tech., Inc.*, 657
F. Supp. 2d 700 (E.D. Va. 2009) . . . . . . . . . . . . . . . . . . . 10

*American Ins. Ass'n* v. *Garamendi*, 539 U.S. 396
(2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bigio* v. *Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2001) . . . . . 21

*Boyle* v. *United Techs. Corp.*, 487 U.S. 500
(1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Buckman Co.* v. *Plaintiffs' Legal Comm.*, 531 U.S.
341 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Carmichael* v. *Kellogg, Brown & Root Serv., Inc.*:
572 F.3d 1271 (11th Cir. 2009), cert. denied, 130 S.
Ct. 3499 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

130 S. Ct. 3499 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18

*Kadic* v. *Karadžić*, 70 F.3d 232 (2d Cir. 1995), cert.
denied, 518 U.S. 1005 (1996) . . . . . . . . . . . . . . . . . . . . . 20

*Kiobel* v. *Royal Dutch Petroleum Co.*, 621 F.3d 111
(2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Koohi* v. *United States*, 976 F.2d 1328 (9th Cir. 1992),
cert. denied, 508 U.S. 960 (1993) . . . . . . . . . . . . . . . . . . 17

Cases—Continued:                                                    Page

    *Presbyterian Church of Sudan* v. *Talisman Energy,
        Inc.,* 582 F.3d 244 (2d Cir. 2009), cert. denied,
        131 S. Ct. 122 and 131 S. Ct. 79 (2010) . . . . . . . . . . . . . 21

    *Rasul* v. *Myers,* 563 F.3d 527 (D.C. Cir.), cert. denied,
        130 S. Ct. 1013 (2009) . . . . . . . . . . . . . . . . . . . . . . . . 17, 22

    *Romero* v. *Drummond Co.,* 552 F.3d 1303
        (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    *Sanchez-Espinoza* v. *Reagan,* 770 F.2d 202 (D.C. Cir.
        1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    *Sinaltrainal* v. *Coca-Cola Co.,* 578 F.3d 1252
        (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

    *Sosa* v. *Alvarez-Machain,* 542 U.S. 692 (2004) . . . . . . 21, 22

Treaties, statutes and regulation:

    Geneva Convention Relative to the Protection of
        Civilian Persons in Time of War, Aug. 12, 1949,
        6 U.S.T. 3516, 75 U.N.T.S. 288:

        art. 3, 6 U.S.T. 3518-3520, 75 U.N.T.S. 288-290 . . . . . 8

        art. 147, 6 U.S.T. 3618, 75 U.N.T.S. 388 . . . . . . . . . . . 8

    Geneva Convention Relative to the Treatment of
        Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316,
        75 U.N.T.S. 135:

        art. 4.A(4), 6 U.S.T. 3320, 75 U.N.T.S. 138 . . . . . . . . 16

        art. 130, 6 U.S.T. 3420, 75 U.N.T.S. 238 . . . . . . . . . . . 8

    Alien Tort Statute, 28 U.S.C. 1350 . . . . . . . . . . . . . . . . . . . . 1

    Federal Tort Claims Act:

        28 U.S.C. 2680(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        28 U.S.C. 2680(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

        28 U.S.C. 2671 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

(IV)

Statutes and regulation—Continued:                    Page

28 U.S.C. 2679(d)(1) ............................. 17
Foreign Claims Act, 10 U.S.C. 2734 ................... 9
National Defense Authorization Act for Fiscal Year
    2005, Pub. L. No. 108-375, § 1088, 118 Stat.
    2066 ............................................ 9
National Defense Authorization Act for Fiscal Year
    2007, Pub. L. No. 109-364, § 552, 120 Stat. 2217 ....... 9
National Defense Authorization Act for Fiscal Year
    2008, Pub. L. No. 110-181, § 841, 122 Stat. 230 ........ 9
National Defense Authorization Act for Fiscal Year
    2010, Pub. L. No. 111-84, § 1038, 123 Stat. 2451 ....... 9
Torture Victim Protection Act of 1991, 28 U.S.C.
    1350 note ...................................... 1, 14
10 U.S.C. 802(a)(10) ................................ 8
18 U.S.C. 2340A .................................... 7
18 U.S.C. 2441 ..................................... 8
18 U.S.C. 3261(a)(1) ................................ 8
28 U.S.C. 1292(b) .................................. 3
42 U.S.C. 2000dd ................................... 7
48 C.F.R. 252.225-7040(b)(2) ........................ 14

Miscellaneous:

Commission on Wartime Contracting,
    http://www.wartimecontracting.gov (last visited
    May 26, 2011) ................................... 9
Congressional Research Service, *Dep't of Defense
    Contractors in Afghanistan & Iraq:  Background
    & Analysis* (Mar. 29, 2011) ....................... 9
Exec. Order No. 13,491, § 3, 3 C.F.R. 200 (2009) ......... 9

(V)

Miscellaneous—Continued:                                              Page

   73 Fed. Reg. (2008):

      pp. 16,764-16,765 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      p. 16,768 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

   75 Fed. Reg. 67,632 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . 9

   U.S. Army:

      *Coalition Provisional Auth. Order No. 17* (June
         2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      Reg. 715-9, ¶ 3-3(d) (1999) . . . . . . . . . . . . . . . . . . . . . . . . 15

   U.S. Dep't of Defense:

      *Section 1206 Public Law 108-375 Report* (2005) . . . . . . . 9

      *Instruction 1100.22:  Policy & Procedures for*
         *Determining Workforce Mix* (Apr. 12, 2010) . . . . . 15

      *Instruction 3020.41:  Contractor Personnel*
         *Authorized to Accompany the U.S. Armed*
         *Forces* (Oct. 3, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

   *U.S./Iraq Agreement, Withdrawal of U.S. Forces*
      *from Iraq & the Organization of Their Activities*
      *during Their Temporary Presence in Iraq,*
      http://www.state.gov/documents/organization/
      122074.pdf (last visited May 26, 2011) . . . . . . . . . . . . . . 10

(VI)

# In the Supreme Court of the United States

———

No. 09-1313

HAIDAR MUHSIN SALEH, ET AL., PETITIONERS

*v.*

TITAN CORPORATION, ET AL.

———

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT*

———

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

———

This brief is submitted in response to the order of this Court inviting the Acting Solicitor General to express the views of the United States. In the view of the United States, the petition for a writ of certiorari should be denied.

## STATEMENT

1. Petitioners are Iraqi nationals previously detained by the United States military at the Abu Ghraib prison complex in Iraq (as well as family members of detainees). They filed two separate suits against respondents, who are civilian contractors that provided interrogation (CACI) and translation (Titan) services to the military during the war in Iraq. As relevant here, petitioners asserted claims under state tort law and federal common law based on the Alien Tort Statute (ATS), 28 U.S.C. 1350, alleging that they were beaten, raped, electrocuted, deprived of food and sleep, threatened by dogs,

(1)

2

shackled in stressful positions, stripped, exposed to extreme heat and cold, and abused sexually and in other ways by respondents' employees.  Pet. App. 2-3, 84-85, 107-109, 118-119.

2. The district court dismissed petitioners' claims based on the ATS, relying on circuit precedent to find no consensus that private acts of torture violate the law of nations.  Pet. App. 109-111, 122-124.  The court determined, however, that it did not have a sufficient evidentiary basis to evaluate whether, as respondents argued, petitioners' state-law claims were preempted by federal law.  The court accordingly ordered limited discovery. *Id.* at 115-116, 128-135.

Subsequently, on motions for summary judgment, the district court applied the analysis set forth in *Boyle* v. *United Technologies Corp.*, 487 U.S. 500 (1988), to evaluate respondents' preemption defense.  Pet. App. 86-105.  In *Boyle*, this Court held that state common-law tort claims against a military contractor based on the design of equipment manufactured according to military specifications were preempted because the claims significantly conflicted with the "'uniquely federal' interest" in the procurement of equipment by the United States. 487 U.S. at 505-506.  The Court looked to the discretionary function exception in the Federal Tort Claims Act (FTCA), 28 U.S.C. 2680(a), to inform the scope of the defense.  487 U.S. at 511-513.

Here, the district court determined that "the treatment of prisoners during wartime undoubtedly implicates uniquely federal interests."  Pet. App. 87.  In assessing "whether the application of state tort law would produce a 'significant conflict' with federal policies or interests," *id.* at 86 (quoting *Boyle*, 487 U.S. at 507), the court focused on "the federal interests embod-

3

ied in the FTCA's combatant activities exception, which
bars suit against the federal government for '[a]ny claim
arising out of the combatant activities of the military or
naval forces, or the Coast Guard, during time of war,'"
*id.* at 87 (quoting 28 U.S.C. 2680(j)) (brackets in origi-
nal).  The court held that petitioners' state-law claims
would be preempted if respondents' employees were
engaged in "activities both necessary to and in direct
connection with actual hostilities," *id.* at 88 (citation
omitted), and "were acting under the direct command
and exclusive operational control of the military chain of
command," *ibid.*

The district court held that respondents' employees
satisfied the first requirement.  Pet. App. 101, 104.  But
the court concluded that, while Titan's employees "were
fully integrated into the military units to which they
were assigned" and "performed their duties under the
direct command and exclusive operational control of
military personnel," *id.* at 103, CACI's employees "were
subject to a dual chain of command, with significant in-
dependent authority retained by CACI supervisors," *id.*
at 104-105.  The court accordingly granted summary
judgment in favor of Titan but denied CACI's motion.
*Id.* at 105-106.

3. CACI filed an interlocutory appeal under 28 U.S.C.
1292(b) and petitioners appealed the final judgment in
favor of Titan.  The court of appeals held that petition-
ers' state-law claims were preempted as to both Titan
and CACI, and that the district court had properly dis-
missed the ATS claims against Titan.  Pet. App. 1-83.[1]

---

[1] The ATS claims against CACI were also dismissed but were not at
issue on appeal.  Pet. App. 8.

4

a. Like the district court, the court of appeals relied on this Court's reasoning in *Boyle* and the FTCA's combatant activities exception to analyze respondents' preemption defense. Finding it undisputed that "uniquely federal interests are implicated in these cases," the court identified the key question as "whether a significant conflict exists between [those] federal interests" and state tort law. Pet. App. 13-14.

Here, the court of appeals noted, petitioners did not dispute either that "the detention of enemy combatants" is "included within the phrase 'combat activities'" for purposes of the FTCA's combatant activities exception, or that respondents' employees were "integrated and performing a common mission with the military under ultimate military command." Pet. App. 13. The court concluded that petitioners' invocation of state-law tort concepts in these circumstances conflicted with the policy underlying the combatant activities exception, namely, to "eliminat[e] tort from the battlefield, both to preempt state or foreign regulation of federal wartime conduct and to free military commanders from the doubts and uncertainty inherent in potential subjection to civil suit." *Id.* at 15. That policy, the court reasoned, is "equally implicated whether the alleged tortfeasor is a soldier or a contractor engaging in combatant activities at the behest of the military and under the military's control." *Ibid.*

The court of appeals also concluded that "specific conflicts" would arise if state tort suits were permitted. Pet. App. 16. For example, litigation costs would be passed through to the government, and military personnel could be "haled into lengthy and distracting court or deposition proceedings" that would often "devolve into an exercise in finger-pointing between the defendant

5

contractor and the military, requiring extensive judicial probing of the government's wartime policies." *Ibid.* The court also noted that preemption of petitioners' state-law claims would not "leave[] the field without any law at all," since "numerous criminal and contractual enforcement options" are available "to punish and deter misconduct by" government contractors, as well as to compensate victims. *Id.* at 17 (citing Foreign Claims Act (FCA), 10 U.S.C. 2734).

In describing the contours of the preemption defense, the court of appeals held that "[d]uring wartime, where a private service contractor is integrated into combatant activities over which the military retains command authority, a tort claim arising out of the contractor's engagement in such activities shall be preempted." Pet. App. 19. The court recognized, however, that "even in a battlefield context," "a service contractor might be supplying services in such a discrete manner * * * that those services could be judged separate and apart from combat activities of the U.S. military." *Id.* at 19-20.[2]

b. With respect to the ATS claims against Titan, the court of appeals regarded petitioners' "factual allegations" on appeal as primarily limited to claims of "abuse" or "harm." Pet. App. 4. The court rejected as "untenable" the contention that every abuse by private actors "is condemned by a settled consensus of international law." *Id.* at 33. The court then considered, "*arguendo*," whether petitioners' claims could be sustained if they "had adequately alleged torture (or war crimes)." *Id.* at 34. The court concluded that "[a]lthough torture com-

---

[2] The court of appeals further held petitioners' claims preempted because the application of state tort law in this context would conflict more generally with federal war powers and foreign policy interests. Pet. App. 25-28.

6

mitted by a state is recognized as a violation of a settled international norm, that cannot be said of private actors." *Ibid.* (citing *Sanchez-Espinoza* v. *Reagan*, 770 F.2d 202, 206-207 (D.C. Cir. 1985)). The court acknowledged that "war crimes" may have a "broader reach," but declined to decide that issue because, as the court described the proceedings, petitioners had not made such allegations and, "[p]resumably for this reason," the district court "analyzed only an asserted international law norm against torture, not war crimes." *Id.* at 34 n.13.

c. Judge Garland dissented from the court's preemption holding. Pet. App. 38-83; *id.* at 82 n.30 (declining to address ATS claims). Although he agreed with the majority that this case involves "uniquely federal interests," *id.* at 48-49 (citation omitted), he believed that the court "should hesitate to extend *Boyle* beyond the scope of the discretionary function exception and direct-conflict rationale that the Court relied upon in that case," *id.* at 48. Acknowledging, however, that the majority's arguments in reliance on the combatant activities exception did not "lack weight," *id.* at 74, Judge Garland would have required at a minimum that the contractor have acted "under the military's control" to support invocation of a preemption defense. *Id.* at 75. Because, in his view of the existing regulatory regime, a civilian contractor is never within the military chain of command, Judge Garland concluded that the contractor's actions can never be preempted as "the combatant activities of the military or naval forces." *Id.* at 75-78 (emphasis omitted).

7

### DISCUSSION

Relying on *Boyle* v. *United Technologies Corp.*, 487 U.S. 500 (1988), and drawing on the FTCA's combatant activities exception, the court of appeals concluded that certain state-law tort claims against government contractors retained in connection with the military's combatant activities abroad are preempted. The court's holding is unclear and imprecise and, depending on how it is read, potentially misguided in certain respects. Nonetheless, this Court's review is not warranted at this time. There is no conflict among the circuits with respect to the preemption issue addressed by the court of appeals, and further explication in future cases could result in refinement and clarification of the scope and meaning of the court's holding. Indeed, further percolation of the full array of defenses implicated in this complex and developing area of the law is as warranted today as it was when this Court denied review last Term in *Carmichael* v. *Kellogg, Brown & Root Service, Inc.*, 130 S. Ct. 3499 (2010). Review of the ATS claims is also unwarranted because the question on which petitioners seek certiorari is not squarely presented and there is no circuit conflict.

1. The United States Government unequivocally opposes torture and has repudiated it in the strongest terms. Federal law makes it a criminal offense to engage in, attempt to commit, or conspire to commit torture outside the United States. 18 U.S.C. 2340A. Congress and the President have unambiguously declared that the United States shall not engage in torture or inhuman treatment. *E.g.*, 42 U.S.C. 2000dd ("No individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or

8

degrading treatment or punishment."); Exec. Order No. 13,491, § 3, 3 C.F.R. 200 (2009) (directing that individuals detained during armed conflict "shall in all circumstances be treated humanely and shall not be subjected to violence to life and person (including murder of all kinds, mutilation, cruel treatment, and torture)"). Such conduct during an armed conflict is a war crime. *E.g.*, Geneva Convention Relative to the Treatment of Prisoners of War, art. 130, Aug. 12, 1949, 6 U.S.T. 3316, 3420 (Third Geneva Convention) (grave breaches include torture or inhuman treatment of protected persons during periods of international conflict); Geneva Convention Relative to the Protection of Civilian Persons in Time of War, art. 147, Aug. 12, 1949, 6 U.S.T. 3516, 3618 (same); *id.* art. 3, 6 U.S.T. at 3518-3520 (prohibiting cruel treatment and torture during periods of non-international conflict); 18 U.S.C. 2441 (criminal penalties for commission of "war crime," defined as, *inter alia*, "a grave breach in any of the international conventions signed at Geneva 12 August 1949" or certain enumerated breaches of "common Article 3").

The United States has at its disposal a variety of tools, enhanced in the wake of events at Abu Ghraib, to punish the perpetrators of acts of torture, to prevent acts of abuse and mistreatment, and to compensate individuals who were subjected to abusive treatment while detained by the United States military. In addition to the criminal prohibitions discussed above, other criminal and contractual remedies are available to punish wrongdoers. *E.g.*, 18 U.S.C. 3261(a)(1) (criminal jurisdiction over felonies committed "while employed by or accompanying the Armed Forces outside the United States"); 10 U.S.C. 802(a)(10) (military jurisdiction over "persons serving with or accompanying an armed force in the

9

field" "[i]n time of declared war or a contingency opera-
tion"); Dep't of Defense (DoD), *Section 1206 Public Law
108-375 Report* 10-13 (2005) (describing criminal and
contractual remedies).[3]

The United States Government also has taken a num-
ber of steps to improve contractor oversight. *E.g.,* Na-
tional Defense Authorization Act for Fiscal Year 2008,
Pub. L. No. 110-181, § 841, 122 Stat. 230 (establishing
independent "Commission on Wartime Contracting" to
study contracting in Iraq and Afghanistan; reports and
hearing documents available at http://www.wartime
contracting.gov; final report due to Congress July 2011);
Congressional Research Service, *DoD Contractors in
Afghanistan & Iraq: Background & Analysis* 18-19
(Mar. 29, 2011) (noting steps DoD has taken to improve
management of contractors in Iraq and Afghanistan).
Significantly, moreover, Congress has now expressly
barred civilian contractors from performing interroga-
tion functions, and has required private translators in-
volved in interrogation operations to undergo substan-
tial training and to be subject to substantial oversight.
National Defense Authorization Act for Fiscal Year
2010, Pub. L. No. 111-84, § 1038, 123 Stat. 2451; 75 Fed.
Reg. 67,632 (2010).

Monetary compensation may also be available
through the FCA, 10 U.S.C. 2734, to individual detainees

---

[3] At the time of the events petitioners allege, extraterritorial criminal
jurisdiction did not extend to civilian employees or contractors for other
federal agencies, National Defense Authorization Act for Fiscal Year
2005, Pub. L. No. 108-375, § 1088, 118 Stat. 2066, and military jurisdic-
tion was limited to "persons serving with or accompanying an armed
force in the field" after a formal declaration of war, National Defense
Authorization Act for Fiscal Year 2007, Pub. L. No. 109-364, § 552, 120
Stat. 2217.

10

subjected to abuse and mistreatment. See Pet. App. 4; *Titan* C.A. App. 759. Petitioner Saleh filed a claim under this administrative regime and was offered $5000 after a U.S. Army investigation concluded that he "was never interrogated while detained at Abu Ghraib, and was not abused while in the custody and control of US forces while at the prison." *Id.* at 751; see Pet. App. 4.

Civilian contractors may also be subject to Iraqi legal process in certain circumstances. Prior to 2009, civilian contractors were provided immunity from Iraqi legal process "with respect to acts performed by them pursuant to the terms and conditions of a Contract or any subcontract thereto." U.S. Army, *Coalition Provisional Auth. Order No. 17*, § 4(3) (June 2004); see *id.* §§ 4(5), 5(1). Since January 1, 2009, most United States contractors and their employees in Iraq have been subject to unrestricted liability under Iraqi law. *U.S./Iraq Agreement, Withdrawal of U.S. Forces from Iraq & the Org. of Their Activities during Their Temporary Presence* 8, 18, at http://www.state.gov/documents/organization/122074.pdf (last visited May 26, 2011).

2. Some former Iraqi detainees, including petitioners here, have instead (or additionally) turned to the tort laws of the several States as a means of obtaining redress.[4]

---

[4] The government is aware of three other pending civil suits brought by foreign nationals against civilian contractors alleging abusive treatment arising out of their detention at the Abu Ghraib prison. See *Al Shimari* v. *CACI Premier Tech., Inc.*, 657 F. Supp. 2d 700 (E.D. Va. 2009) (denying contractor's motion to dismiss state-law tort claims), appeal pending, No. 09-1335 (4th Cir.); *Al-Quraishi* v. *Nakhla*, 728 F. Supp. 2d 702 (D. Md. 2010) (same), appeal pending, No. 10-1921 (4th Cir.); *Abbass* v. *CACI Premier Tech., Inc.*, No. 09-229 (D.D.C. filed Feb. 5, 2009) (case stayed). Oral argument on the interlocutory appeals in *Al Shimari* and *Al-Quraishi* was held on October 26, 2010, and the

11

a. In evaluating petitioners' state-law claims, the court of appeals relied on this Court's decision in *Boyle* to recognize a federal preemption defense informed by the FTCA's combatant activities exception.  That general approach is consistent with *Boyle*, though as we explain, the way in which it applied *Boyle* was unclear and potentially problematic, depending on how the court of appeals' decision is read in future cases.  In *Boyle*, the Court looked to the FTCA's discretionary function exception to inform the preemption analysis where invocation of state law raised a "discrete conflict in which satisfying both state and federal duties * * * was impossible."  Pet. App. 15.  The Court, however, recognized that "[d]isplacement" may also be appropriate if "the application of state law would 'frustrate specific objectives' of federal legislation" and that, "[i]n some cases," the federal interest may require "a uniform rule" such that the "entire body of state law applicable to the area conflicts and is replaced by federal rules."  *Boyle*, 487 U.S. at 507-508.

Here, much as in *Boyle*, the subject of petitioners' suits—namely, "the treatment of prisoners during wartime"—implicates "uniquely federal interests."  Pet. App. 87; *id.* at 13; *id.* at 49 (Garland, J., dissenting); cf. *Boyle*, 487 U.S. at 504-507.  Those interests include ensuring that detention operations are conducted in a manner consistent with humane treatment obligations and the laws of war and that contractors are held accountable for their conduct by appropriate means—as well as avoiding unwarranted judicial second-guessing of sensitive judgments by military personnel and con-

court of appeals is holding those cases in abeyance pending resolution of this petition. Dkt. Nos. 72, 75 (No. 09-1335); Dkt. Nos. 40, 43 (No. 10-1921).

12

tractors with which they interact in combat-related ac-
tivities, and ensuring that there are appropriate limits
on private tort suits based on such activities.  By con-
trast, as the court below observed, it is not clear what
interest any particular State would have in the subject
of this suit by Iraqi nationals arising out of their deten-
tion by the United States military in Iraq.  See Pet. App.
20, 25-26; cf. *id.* at 70-71 (Garland, J., dissenting) (noting
that "many states would indeed have little or no interest
in this particular litigation," but suggesting States may
have an "interest in ensuring that their corporations
refrain from abusing prisoners—even in a foreign coun-
try"); *American Ins. Ass'n* v. *Garamendi*, 539 U.S. 396,
425-427 (2003) (contrasting the weakness of the state
interest with the strength of the federal interest in ad-
dressing conduct in a foreign country).[5]

   In this field of uniquely federal interests, petitioners'
reliance on a presumption against preemption of a
State's exercise of its "historic police powers," Pet. 27
(citation omitted), is misplaced.  See *Boyle*, 487 U.S. at
504, 507-508; see also *Buckman Co.* v. *Plaintiffs' Legal
Comm.*, 531 U.S. 341, 347-348 (2001) (holding that no
presumption against preemption applies in an area
States have not traditionally occupied).  And as this
Court made clear in *Boyle*, to find displacement of state
law in an area of uniquely federal interests, "[t]he con-
flict with federal policy need not be as sharp as that
which must exist for ordinary pre-emption when Con-

-----

   [5]  As the court of appeals noted, petitioners "did not, at the briefing
stage, even identify *which* sovereign's substantive common law of tort
should apply to their case although at oral argument counsel explained
that, in [their] view, D.C. law applied."  Pet. App. 23.  Petitioners have
disclaimed Iraqi law as a basis for their claims.  See *id.* at 69 n.20
(Garland, J., dissenting).

gress legislates 'in a field which the States have tradi-
tionally occupied.'" *Boyle*, 487 U.S. at 507 (citation
omitted).

In giving effect to the unique federal interests at is-
sue, the court of appeals reasonably turned to the
FTCA's combatant activities exception for guidance.
The court explained that the policy embodied in that
exception is "the elimination of tort from the battlefield,
both to preempt state or foreign regulation of federal
wartime conduct and to free military commanders from
the doubts and uncertainty inherent in potential subjec-
tion to civil suit." Pet. App. 15. To be sure, the FTCA
does not directly apply to the actions of private contrac-
tors or render the United States liable for their actions.
See 28 U.S.C. 2671 ("[T]he term 'Federal agency' * * *
does not include any contractor with the United
States."); Pet. App. 60-61 (Garland, J., dissenting). But
*Boyle* nonetheless makes clear that a state-law claim
against a government contractor may be preempted in-
sofar as it conflicts with significant federal interests,
and that the contours of the preemption may be in-
formed by the FTCA.

Although the FTCA's combatant activities exception
is directly triggered only by actions of United States
military and civilian personnel themselves, the court of
appeals in this case determined that the policies embod-
ied in that exception can also be implicated by the ac-
tions of contractor employees who are closely integrated
into combat-related activities. Pet. App. 15. The court
reasoned that, in both situations, a state-law tort suit
raises "the prospect of military personnel being haled
into lengthy and distracting court or deposition proceed-
ings" and "extensive judicial probing of the govern-
ment's wartime policies." *Id.* at 16. The court also con-

14

sidered in this setting:  the availability of alternative remedies (*id.* at 17; pp. 8-10, *supra*); Congress's failure to provide a federal civil cause of action for torture despite enacting "comprehensive legislation dealing with the subject of war crimes, torture, and the conduct of U.S. citizens acting in connection with military activities abroad" (Pet. App. 28 n.9); Congress's decision to limit the scope of the federal cause of action it created in the Torture Victim Protection Act of 1991, 28 U.S.C. 1350 note, to persons acting under the authority or color of law of a foreign nation (Pet. App. 28 n.9); and the prospect of subjecting military policy judgments to the laws of "fifty-one separate sovereigns" (*id.* at 23).[6]

---

[6]  Petitioners appear to rely on a recent amendment to the Defense Federal Acquisition Regulation Supplement to contend (Pet. 35) "that the Executive recently reaffirmed the use of the existing system of tort liability as one mechanism to deter misconduct" by its contractors. That amendment provides that "[c]ontract performance in support of U.S. Armed Forces deployed outside the United States may require work in dangerous or austere conditions.  Except as otherwise provided in the contract, the Contractor accepts the risks associated with required contract performance in such operations."  48 C.F.R. 252.225-7040(b)(2).  In responding to public comments, DoD affirmed that "the clause retains the current rule of law," as expressed in recent court cases, "holding contractors accountable for the negligent or willful actions of their employees, officers, and subcontractors."  73 Fed. Reg. 16,768 (2008).  DoD further clarified, however, that the amendment "makes no changes to existing rules regarding liability," and that "[c]ontractors will still be able to defend themselves when injuries to third parties are caused by the actions or decisions of the Government."  *Ibid.*  DoD's response to public comments also suggested that *Boyle* "does not apply when a performance-based statement of work is used in a services contract," and that the amended rule should not "invite courts to shift the risk of loss to innocent third parties" through "defenses based on the sovereignty of the United States" for the contractor's "own actions."  *Ibid.*  In this case, the court of appeals concluded that respondents were not acting under a "performance-

15

b. The court of appeals' recognition of a federal preemption defense informed by the FTCA is generally consistent with the approach this Court took in *Boyle*. But the court's description of the contours of that defense is inexact, unclear, and potentially misguided in certain respects.

For example, the court of appeals appears to have focused its inquiry on whether the contractor was itself "engaging in combatant activities" (Pet. App. 15) or was "integrated into combatant activities" (*id.* at 19). In phrasing the test in this manner, the court may have misunderstood the circumscribed role private contractors play in war zones. Under domestic and international law, civilian contractors engaged in authorized activity are not "combatants"; they are "civilians accompanying the force" and, as such, cannot lawfully engage in "combat functions" or "combat operations." See DoD, *Instruction 3020.41: Contractor Personnel Authorized to Accompany the U.S. Armed Forces* ¶ 6.1.1 (Oct. 3, 2005); *id.* ¶ 6.1.5 ("Functions and duties that are inherently governmental are barred from private sector performance."); DoD, *Instruction 1100.22: Policy & Procedures for Determining Workforce Mix*, Encl. 4, ¶ 1.c(1)(b) (Apr. 12, 2010) ("Combat Operations" are inherently governmental); 73 Fed. Reg. at 16,764-16,765 ("[T]he Government is not contracting out combat functions."); Army Reg. 715-9, ¶ 3-3(d) (1999) ("In the context of the law of war, contracted support service personnel are civilians accompanying the force. * * * They may not be used in or undertake any role that could jeopardize their status as civilians accompanying

based statement of work." Pet. App. 20-21 (emphasis and citation omitted). And, to the extent there is ambiguity, DoD's response to public comments was not intended to opine on the state of the law.

16

the force."). International law recognizes that civilians authorized to accompany the force in order to provide support are entitled to certain status and protections. *E.g.*, Third Geneva Convention, art. 4.A(4), 6 U.S.T. at 3320 (including "[p]ersons who accompany the armed forces without actually being members thereof" within the definition of "[p]risoners of war").

Moreover, application of the FTCA's combatant activities exception, on which the court of appeals drew, does not turn on whether a challenged act is itself a "combatant activity," or whether the tortfeasor is himself engaging in a "combatant activity." Rather, it speaks of claims "*arising out of* the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. 2680(j) (emphasis added). A more precise focus on claims "arising out of" the *military's* combatant activities would allow for a more accurate assessment of the contractor's distinct role, and avoid confusing it with the role of military personnel.

In addition, the court of appeals did not address whether application of the preemption defense it recognized would be appropriate if the contractor employees acted outside the scope of their employment or the contractor acted outside the scope of the contract, nor did it address the contours of either such limitation. Petitioners and the dissent expressed concern that, because the court of appeals failed to consider whether the tortfeasors acted within the scope of their employment, contractor employees might be afforded "more protection than our soldiers and other government employees receive [under the Westfall Act]," "which provides that, '[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment,' the federal employee is dismissed

17

and 'the United States shall be substituted as the party defendant.'" Pet. App. 61 (Garland, J., dissenting) (emphasis omitted) (quoting 28 U.S.C. 2679(d)(1)); Pet. 21, 30-31; cf. *Rasul* v. *Myers*, 563 F.3d 527, 528 & n.1 (D.C. Cir.) (alleged acts of mistreatment of detainees by government employees within scope of employment under Westfall Act), cert. denied, 130 S. Ct. 1013 (2009). Whatever force that argument may have in the abstract, or in other contexts, here the only defendants are civilian contractors (not the individual contractor employees). The employees' actions must, by definition, fall within the scope of their employment for petitioners to prevail under the doctrine of respondeat superior.

c. The Court's review is not warranted at this time. There is no circuit conflict on this question. Only one other court of appeals has addressed federal preemption based on the combatant activities exception, and that decision is consistent with the decision below. See *Koohi* v. *United States*, 976 F.2d 1328 (9th Cir. 1992) (state-law tort claims brought against contractor, alleging defects in manufactured weapons system used in accidental shooting of Iranian commercial airplane flying in combat zone), cert. denied, 508 U.S. 960 (1993). As petitioners note (Pet. 30-31), *Koohi* arose on different facts, and the underlying rationale would not necessarily dictate the same result here. Nonetheless, the only two appellate decisions are consistent with one another, and the absence of any other appellate decision in the intervening two decades counsels in favor of awaiting further developments in the lower courts.

Petitioners assert that the court's decision will "immunize[]" several hundred-thousand contractor employees, "cover[] all contractor employees supporting the military in Iraq and Afghanistan," and provide "nothing

18

short of full immunity for all contractors supporting the military during a time of war." Pet. 20-21, 33-34. Those assertions considerably overstate the scope of the court of appeals' holding. The court held that federal preemption is appropriate where the alleged acts occur (1) "[d]uring wartime," (2) "where a private service contractor is integrated," (3) "into combatant activities," (4) "over which the military retains command authority," (5) unless the contractor is providing services in "such a discrete manner" that they "could be judged separate and apart from combat activities of the U.S. military." Pet. App. 19-20. The court of appeals did not define the term "combatant activities," and that issue was never litigated because petitioners did not dispute that respondents' actions qualified. See *id.* at 13. Nor did the court elaborate upon any circumstances beyond this case when a contractor would be regarded as sufficiently "integrated" into combatant activities; what may be necessary in other circumstances for the military to "retain[] command authority"; or when services might be supplied in a sufficiently "discrete" manner that they could be judged separate from the military. *Id.* at 19-20. These are important limitations and the court of appeals' decision leaves them open for further elaboration and clarification in future cases. Any review by this Court would significantly benefit from further explication of those issues in concrete factual settings.[7]

Last Term this Court denied the certiorari petition in *Carmichael*, *supra*, which also raised issues concerning

---

[7] This case is also atypical of those cases that have raised questions about the doctrinal framework governing claims against government contractors providing support to the United States military and, as explained above (pp. 8-10, *supra*), the United States has taken a number of steps to prevent future abuses of the kind petitioners allege.

19

claims against government contractors providing support to the United States military.  The petitioner in *Carmichael* sought review of an Eleventh Circuit decision dismissing, on political-question grounds, state-law tort claims brought by a U.S. servicemember against a contractor providing tactical support to the Army in Iraq.  *Carmichael* v. *Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271 (2009), cert. denied, 130 S. Ct. 3499 (2010).  In a brief filed at the Court's invitation, the government noted that this area of the law would benefit greatly from further percolation in the lower courts.  Gov't Br. at 9, 13-14, 22, *Carmichael*, *supra* (No. 09-683).  Notably, at that time, the D.C. Circuit had already issued its decision in this case, and the case was discussed in the government's amicus brief.  *Id.* at 13, 21-22.  Although some district courts have decided related cases in the ensuing year, no other appellate court has issued a decision.  Cf. note 4, *supra* (noting pending appeals in the Fourth Circuit).  Further percolation with respect to the novel and complex issues raised by this and other similar cases is needed as much today as it was when this Court denied review in *Carmichael*.

3. Petitioners also ask this Court to grant review on whether petitioners' claims of torture and other war crimes can be brought against private actors under the ATS.  That question is not squarely presented in this case, does not implicate any circuit conflict, and does not warrant this Court's review.

Contrary to petitioners' assertion (Pet. 5), the court of appeals did not rule that "claims for murder, torture and other war crimes under the [ATS] could not be brought against non-state parties."  Rather, the court rejected petitioners' ATS claims based on its conclusion that they had not properly pursued claims of murder,

20

torture, or other war crimes on appeal, and that claims based on assault and battery reflected an "untenable" articulation of a "supposed consensus of international law." Pet. App. 4, 33. Although petitioners respond (Pet. 14 n.4) that the court of appeals ignored specific allegations of war crimes and torture set forth in their complaints and on appeal, that fact-specific issue does not warrant this Court's review.

The court of appeals also stated that "[a]ssuming, *arguendo*, that [petitioners] had adequately alleged torture (or war crimes)," torture committed by private actors is not recognized as a violation of a settled international law norm. Pet. App. 34. The court did not hold, however, that war crimes—including torture when inflicted on a protected person in the course of armed conflict, which is a war crime (p. 8, *supra*)—cannot be asserted against non-state actors. Instead, in a footnote, the court recognized that "it may be that 'war crimes' have a broader reach" than torture alone. *Id.* at 34 n.13. But because it did not view petitioners as having presented such allegations on appeal, the court did not decide that issue. *Ibid.* Thus, at most, the court of appeals' decision could be read as holding, in the alternative, that conduct by a non-state actor that is not committed under color of law, or as a war crime, does not support a claim for torture in violation of a well-settled international law norm for purposes of ATS analysis.

That alternative holding does not implicate any circuit conflict. The cases petitioners cite address state action for claims of torture "in the course of war crimes" or "in furtherance of war crimes" (Pet. 16 (citation omitted))—the precise issue the court of appeals declined to decide. *Kadic* v. *Karadžić*, 70 F.3d 232, 241-243 (2d Cir. 1995), cert. denied, 518 U.S. 1005 (1996), held that

21

claims of genocide and war crimes (including torture
when perpetrated in the course of genocide and war
crimes) are actionable against non-state actors.  See
*Presbyterian Church of Sudan* v. *Talisman Energy,
Inc.*, 582 F.3d 244, 254-255 (2d Cir. 2009) (describing
*Kadic* as recognizing "that claims for genocide and war
crimes against individuals could proceed without state
action"), cert. denied, 131 S. Ct. 122 and 131 S. Ct. 79
(2010); *Abdullahi* v. *Pfizer, Inc.*, 562 F.3d 163, 173 (2d
Cir. 2009) (same), cert. denied, 130 S. Ct. 3541 (2010).
Likewise, in *Romero* v. *Drummond Co.*, 552 F.3d 1303,
1316 (2008), the Eleventh Circuit cited *Kadic* for the
proposition that "individuals may be liable, under the
law of nations, for some conduct, such as war crimes,
regardless of whether they acted under color of law of a
foreign nation."  See *Sinaltrainal* v. *Coca-Cola Co.*, 578
F.3d 1252, 1263 (11th Cir. 2009).  In contrast, the Second
Circuit in *Kadic* stated that "torture and summary
execution—when not perpetrated in the course of geno-
cide or war crimes—are proscribed by international law
only when committed by state officials or under color of
law."  70 F.3d at 243; see *Bigio* v. *Coca-Cola Co.*, 239
F.3d 440, 448 (2d Cir. 2001).[8]

As petitioners appear to recognize (Pet. 17), the issue
in the above-cited cases was not whether claims against
private actors are cognizable in suits based on the ATS
as a general matter.  Under the norm-by-norm approach
of *Sosa* v. *Alvarez-Machain*, 542 U.S. 692 (2004), acts
committed by non-state actors may or may not violate
international law, depending on the violation alleged.
No court of appeals, including the court below, has held

---

[8]  The Second Circuit has since also held that there is no corporate
liability under the ATS.  See *Kiobel* v. *Royal Dutch Petroleum Co.*, 621
F.3d 111 (2010).

22

that acts committed by non-state actors are categorically beyond the reach of the ATS.

Consideration by this Court of petitioners' claims based on the ATS is unwarranted for an additional reason. This suit is brought by foreign nationals against U.S. persons based on conduct occurring in a military setting in a foreign country, and it therefore raises a threshold question whether a federal common-law cause of action based on the jurisdictional grant in the ATS should be created in these circumstances. See *Sosa*, 542 U.S. at 725-728; cf. Pet. App. 34-37; *Rasul*, 563 F.3d at 532 n.5 (special factors counsel against creating *Bivens* cause of action by foreign nationals against U.S. officials based on allegations of abuse in military detention).

### CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

NEAL KUMAR KATYAL
  *Acting Solicitor General*
TONY WEST
  *Assistant Attorney General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
LEONDRA R. KRUGER
  *Acting Deputy Solicitor General*
MELISSA ARBUS SHERRY
  *Assistant to the Solicitor General*
MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
  *Attorneys*

MAY 2011