# Exhibit C

**Nos. 09-1335, 10-1891, 10-1921**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

SUHAIL NAJIM ABDULLAH AL SHIMARI, et al.
Plaintiffs-Appellees,
v.
CACI INTERNATIONAL, INC., et al.,
Defendants-Appellants.

WISSAM ABDULLATEFF SA'EED AL-QURAISHI,
Plaintiff-Appellee,
v.
L-3 SERVICES, INC., et al.,
Defendants-Appellants.

On Appeal From The United States District Courts
For The Eastern District Of Virginia And The District of Maryland

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

TONY WEST
  *Assistant Attorney General*

MICHAEL S. RAAB
  (202) 514-4053
H. THOMAS BYRON III
  (202) 616-5367
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C. 20530-0001*

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT. ............................................................................. 1

ARGUMENT. ................................................................................................... 3

I.    THIS COURT LACKS JURISDICTION TO DECIDE
      THE INTERLOCUTORY APPEALS. ............................................... 3

      A.    Collateral Order Review Is A Narrow Exception. ...................... 4

      B.    Preemption Decisions Are Not Immediately
            Appealable. ............................................................................... 5

      C.    The Political Question Doctrine Does Not Require
            Immediate Review Of These Interlocutory Decisions. .............. 8

      D.    The Defendants' Claims Of Immunity Do Not
            Require Immediate Review. ....................................................... 9

II.   IF THERE IS APPELLATE JURISDICTION, THE COURT
      SHOULD DIRECT THE DISTRICT COURTS TO
      RECONSIDER FEDERAL PREEMPTION INFORMED IN
      PART BY THE FTCA'S COMBATANT ACTIVITIES
      EXCEPTION. .............................................................................. 13

CONCLUSION. ............................................................................................... 27

# TABLE OF AUTHORITIES

**Cases:**                                                                 **Page**

*Ali* v. *Rumsfeld*, 649 F.3d 762, 774-775 (D.C. Cir. 2011). ............................ 24, 25

*Al-Quraishi* v. *L-3 Services, Inc.*, 657 F.3d 201 (4th Cir. 2011),
      vacated on reh'g en banc (4th Cir. Nov. 8, 2011). ...................................... 5, 7

*Al-Quraishi* v. *Nakhla*, 728 F. Supp. 2d 702 (D. Md. 2010). ........................ 12, 13

*Al Shimari* v. *CACI Int'l, Inc.*, 658 F.3d 413 (4th Cir. 2011),
      vacated on reh'g en banc (4th Cir. Nov. 8, 2011). ........................................ 17

*Al Shimari* v. *CACI Premier Technology, Inc.*, 657 F. Supp. 2d 700
      (E.D. Va. 2009). ...................................................................... 12, 13

*Alaska* v. *United States*, 64 F.3d 1352 (9th Cir. 1995). .......................................... 9

*Barr* v. *Matteo*, 360 U.S. 564 (1959). ................................................................. 20-21

*Boyle* v. *United Technologies Corp.*, 487 U.S. 500 (1988). .................. 5, 14-15, 21

*Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U.S. 863 (1994)........... 4,10

*Doe* v. *Exxon Mobil Corp.*, 473 F.3d 345 (D.C. Cir. 2007).................................... 8

*Dow* v. *Johnson*, 100 U.S. 158 (1879)...................................................... 10, 11, 12

*Hamdi* v. *Rumsfeld*, 542 U.S. 507 (2004). ............................................................ 24

*Harris* v. *Kellogg Brown & Root Servs., Inc.*, 618 F.3d 398 (3d Cir. 2010). ...... 7-8

*Houston Community Hosp.* v. *Blue Cross and Blue Shield of Texas, Inc.*,
      481 F.3d 265 (5th Cir. 2007). ................................................................ 9

*Johnson* v. *Eisentrager*, 339 U.S. 763 (1950)..................................................... 23

*Johnson* v. *Jones*, 515 U.S. 304 (1995). ........................................................ 4-5, 9

*Johnson* v. *United States*, 170 F.2d 767 (9th Cir. 1948)................................. 18-19

*Koohi* v. *United States*, 976 F.2d 1328, 1333. ................................................ 18-19

*Kosak* v. *United States*, 465 U.S. 848 (1984). ................................................... 19

*Lebron* v. *Rumsfeld*, 4th Cir. No. 11-6480 (oral argument held
    Oct. 26, 2011). ......................................................................................... 25

*Martin* v. *Halliburton*, 618 F.3d 476 (5th Cir. 2010). ................................. 7, 10, 12

*McMahon* v. *Presidential Airways, Inc.*, 502 F.3d 1331
    (11th Cir. 2007). ....................................................................................... 13

*Mitchell* v. *Forsyth*, 472 U.S. 511 (1985). ...................................................... 9, 12

*Mohawk Indus.* v. *Carpenter*, 130 S. Ct. 599 (2009)......................................... 4, 7

*Munaf* v. *Geren*, 553 U.S. 674 (2008). ................................................................ 24

*Oscarson* v. *Office of the Senate Sergeant at Arms*, 550 F.3d 1 (D.C. Cir. 2008) .10

*Pullman Constr. Indus.* v. *United States*, 23 F.3d 1166 (7th Cir. 1994)................ 9

*Ex parte Quirin*, 317 U.S. 1 (1942). ..................................................................... 24

*Rasul* v. *Myers*, 512 F.3d 644 (D.C. Cir. 2008), cert. granted, vacated, and
    remanded on other grounds, 555 U.S. 1083 (2008),
    reinstated in relevant part, 563 F.3d 527, 528-529 (D.C. Cir. 2009)........... 24

*Rodriguez* v. *Lockheed Martin*, 627 F.3d 1259 (9th Cir. 2010)............................ 7

*Rux* v. *Sudan*, 461 F.3d 461 (4th Cir. 2006). ..................................................... 8-9

*Saleh* v. *Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), cert. denied,
    131 S. Ct. 3055 (2011). ........................................... 5-6, 8, 15, 16, 18, 19, 21

*Vulcan Materials Co.* v. *Massiah*, 645 F.3d 249 (4th Cir. 2011). ......................... 6

*Wagner* v. *Wheeler*, 13 F.3d 86 (4th Cir. 1993)..................................................... 13

*Westfall* v. *Erwin*, 484 U.S. 292 (1988)................................................................. 21

*In re World Trade Center Disaster Site Litigation*, 521 F.3d 169
   (2d Cir. 2008). .................................................................................................. 9-10

**Statutes:**

Federal Tort Claims Act (FTCA)

   28 U.S.C. § 2671. ..................................................................................... 16
   28 U.S.C. § 2679(d)(1). ............................................................................ 19
   28 U.S.C. § 2679(d)(2). ............................................................................ 19
   28 U.S.C. § 2680(a). ................................................................................. 14
   28 U.S.C. § 2680(c) .................................................................................. 19
   28 U.S.C. § 2680(j)......................................................................... 2, 5, 15, 17, 18

10 U.S.C. § 802(a)(10)............................................................................... 22
10 U.S.C. § 2734........................................................................................ 22

18 U.S.C. § 2340............................................................................... 3, 22, 23, 26
18 U.S.C. § 3261(a)(1)............................................................................... 22

28 U.S.C. § 1292(b). ........................................................................... 4, 6, 8

Pub. L. No. 111-84, § 1038, 123 Stat. 2451. ....................................... 23

**Regulations:**

75 Fed. Reg. 67,632 (2010). ..................................................................... 23

**Miscellaneous:**

Congressional Research Service, Department of Defense Contractors in
   Afghanistan & Iraq: Background & Analysis(Mar. 29, 2011). ................... 23

Construction and Application of Combatant Activities Exception to
   Federal Tort Claims Act, 23 A.L.R. Fed. 2d 489 (2007)............................ 19

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

Nos.  09-1335, 10-1891, 10-1921

SUHAIL NAJIM ABDULLAH AL SHIMARI, et al.
Plaintiffs-Appellees,
v.
CACI INTERNATIONAL, INC., et al.,
Defendants-Appellants.

WISSAM ABDULLATEFF SA'EED AL-QURAISHI,
Plaintiff-Appellee,
v.
L-3 SERVICES, INC., et al.,
Defendants-Appellants.

On Appeal From The United States District Courts
For The Eastern District Of Virginia And The District of Maryland

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

**SUMMARY OF ARGUMENT**

Although the jurisdictional issues present close questions, we believe this appeal is premature.  The collateral order doctrine does not extend to defendants' asserted preemption and political question defenses, which can be addressed by this Court at an appropriate later stage of the litigation, either after final judgment or on a certified interlocutory appeal.  The district courts also concluded that limited

discovery was necessary to resolve conclusively defendants' claims of derivative sovereign or official immunity. And defendants' claimed entitlement to immunity under the laws of war is not in this context a freedom from trial giving rise to an interlocutory appeal as of right.

None of those jurisdictional concerns should detract from the significant federal interests at stake: ensuring that state-law tort litigation does not lead to second-guessing military judgments, protecting the primacy of existing tools for the government to regulate the conduct of contractors working on behalf of the United States (especially where civilian contractors work alongside service members in the military's conduct of combat-related activities), and ensuring that military detention operations are conducted in a manner consistent with humane treatment obligations and the laws of war, and ensuring that contractors are held accountable for their conduct by appropriate means. Those interests must be protected during any further proceedings in these cases and, with those interests in mind, the district courts should promptly reevaluate the preemption defense, as discussed below.

If this Court were to reach the merits of the preemption defense raised here, it should recognize the primacy of those important federal interests. The federal interest in protecting the conduct of the military's combat operations from interference by litigation based on state tort law is expressed, for example, in the "combatant activities" exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(j). As explained below, this Court should hold that state tort law claims against contractors are generally preempted if similar claims brought against the United

2

States would come within the FTCA's combatant activities exception and if the alleged actions of the contractor and its personnel occurred within the scope of their contractual relationship with the government, particularly if the conduct occurred while contractor personnel were integrated with the military in its combat-related activities. Even if all of those circumstances exist, however, there should be no federal preemption in the limited circumstances of these cases, to the extent that a contractor has committed torture as defined in 18 U.S.C. § 2340. In the circumstances here, the totality of the federal interests is different and does not require that state-law tort suits against contractors be preempted.

The parties should have the opportunity on remand to address the application of those principles to these cases. Any discovery should be carefully limited at the outset, and focused on resolving the applicability of the preemption defense in the first instance. And any factual inquiry into the conduct of military and contractor personnel in a war zone must be sensitive to the need to avoid second-guessing battlefield decisions and also must avoid intruding into the military command decision-making process.

## ARGUMENT

## I.    THIS COURT LACKS JURISDICTION TO DECIDE THE INTERLOCUTORY APPEALS.

This Court should conclude that the interlocutory orders denying defendants' motions to dismiss are not immediately appealable. That conclusion does not come easily. Postponing review poses serious concerns, including the risk that prolonged

litigation without a dispositive appellate determination on preemption could distract military and civilian personnel from their critical duties to safeguard national security, and could impose intrusive discovery requirements on military personnel. Nevertheless, those concerns can and should be addressed by careful limitation and close supervision of any necessary discovery by the district courts, and by the use of existing mechanisms for interlocutory appellate review, including certification under 28 U.S.C. § 1292(b).

## A.    Collateral Order Review Is A Narrow Exception.

Defendants seek appellate review of orders denying motions to dismiss that relied on a variety of defenses, including preemption of state law claims, derivative immunity, what defendants term "law-of-war immunity," and the political question doctrine.   The Supreme Court has recently reiterated the importance of "the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk Indus.* v. *Carpenter*, 130 S. Ct. 599, 605 (2009) (quoting *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).   The collateral order doctrine, an exception to that general rule, allows for review of "a narrow class of decisions that do not terminate the litigation" but are sufficiently important and collateral to the merits that they should "nonetheless be treated as final." *Digital Equipment*, 511 U.S. at 867.

To qualify as an immediately appealable collateral order, an interlocutory decision must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be

4

effectively unreviewable on appeal from a final judgment." *Johnson* v. *Jones*, 515 U.S. 304, 310 (1995) (internal quotation marks omitted).

### B.    Preemption Decisions Are Not Immediately Appealable.

District court decisions declining to dismiss a case on the ground of federal preemption would not typically satisfy the standard for appealable collateral orders. Preemption is typically a defense to liability, and a defendant is generally not entitled to interlocutory appeal from a denial of a motion to dismiss on that ground. Although the preemption defense raised in these cases implicates unique federal interests, including concerns arising from the effect of discovery and other pretrial proceedings on military discipline and readiness, it still does not gives rise to an immediate appeal as of right.

The United States generally agrees that preemption principles, as expressed in *Boyle* v. *United Technologies Corp.*, 487 U.S. 500 (1988), and as applied here drawing on the combatant activities exception under the FTCA, 28 U.S.C. § 2680(j), provide an appropriate framework for analyzing whether state law claims are preempted in this context, taking into account the distinct treatment of claims concerning conduct that would constitute torture as defined in federal law. See *infra*. We also agree that the principles of preemption at issue here should be recognized and given effect "in the early stages of litigation." *Al-Quraishi* v. *L-3 Services, Inc.*, 657 F.3d 201, 205 (4th Cir. 2011), vacated on reh'g en banc (4th Cir. Nov. 8, 2011). Courts should be properly sensitive to the concern that unfettered discovery proceedings could affect military readiness. See, *e.g.*, *Saleh*, 580 F.3d at 8 (concern

about "the prospect of military personnel being haled into lengthy and distracting court or deposition proceedings," which "will as often as not devolve into an exercise in finger-pointing between the defendant contractor and the military, requiring extensive judicial probing of the government's wartime policies"); *cf. Vulcan Materials Co.* v. *Massiah*, 645 F.3d 249, 266 (4th Cir. 2011) (discussing "military discipline" rationale for limiting tort suits involving military decision-making). But the district courts have the authority to manage and properly limit discovery and other proceedings to prevent any adverse effect on military and other government operations.

A district court has the authority to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) should appellate review become necessary before final judgment. Defendants in *Saleh* successfully pursued such an appeal, see *Saleh*, 580 F.3d at 4, and certification under § 1292(b) may be appropriate here as well, following further consideration of the preemption issues by the district courts. In appropriate circumstances, a writ of mandamus also may be available to ensure that important federal interests are protected if a district court were to decline to certify interlocutory appeal at an appropriate stage of litigation. Thus, although a preemption defense of the sort at issue here should be resolved as early as possible, that consideration by itself does not require adoption of a categorical rule that every denial of such a defense should be immediately appealable as of right.

Notably, the panel here did not hold that a preemption decision alone would be immediately appealable. Instead, the decision pointed to the combination of

6

"substantial issues relating to federal preemption, separation-of-powers, and immunity" which the panel majority believed "could not be addressed on appeal from final judgment." *Al-Quraishi*, 657 F.3d at 205. But each of those issues should be analyzed separately to determine whether immediate appeal is available. The particular combination of doctrines, issues, and considerations at issue in these cases does not create appellate jurisdiction where the individual issues themselves would not support immediate review. See *Mohawk*, 130 S. Ct. at 605 ("In making this determination, we do not engage in an individualized jurisdictional inquiry. Rather, our focus is on the entire category to which a claim belongs.") (internal quotation marks and citations omitted).

Every other court of appeals to consider the question has concluded that district court denials of preemption defenses of this sort are not immediately appealable. In the most directly analogous case, the Fifth Circuit held that a government contractor's claim of preemption informed by the combatant activities exception is not immediately appealable under the collateral order doctrine. See *Martin* v. *Halliburton*, 618 F.3d 476, 486-488 (5th Cir. 2010). The Ninth Circuit similarly held that a government contractor's preemption claim based on the discretionary function exception is not appealable as a collateral order. See *Rodriguez* v. *Lockheed Martin*, 627 F.3d 1259, 1265-1266 (9th Cir. 2010). And other courts have declined to consider combatant activities preemption issues before final judgment. See *McMahon* v. *Presidential Airways, Inc.*, 502 F.3d 1331, 1366 (11th Cir. 2007) (declining to exercise pendent appellate jurisdiction); *Harris* v. *Kellogg Brown &*

*Root Servs., Inc.*, 618 F.3d 398, 401-404 (3d Cir. 2010) (no immediate review because district court ruling was tentative).  The D.C. Circuit decision in *Saleh* is consistent with that approach – the district court had granted summary judgment as to one defendant, and certified interlocutory appeal under 28 U.S.C. § 1292(b) for the other.  See 580 F.3d at 4.

### C.    The Political Question Doctrine Does Not Require Immediate Review Of These Interlocutory Decisions.

Defendants also seek review of the district courts' determination that the political question doctrine does not bar litigation of the claims in these cases.  But, like preemption, political question arguments typically do not require interlocutory appellate intervention.  See, *e.g.*, *Doe* v. *Exxon Mobil Corp.*, 473 F.3d 345, 351 (D.C. Cir. 2007).  Indeed, defendants here do not contend that immediate review of the political question argument is available under the collateral order doctrine.[1]

Defendants instead argue that this Court should resolve any justiciability concerns before reaching other questions, contending that the political question objection deprived both the district court and this Court of jurisdiction to consider the case at all.  See CACI Br. 6-7; L-3 Br. 51-52.  But this Court recently rejected an analogous argument in a case where a defendant urged the Court to resolve concerns about standing that would not otherwise be immediately reviewable.  See *Rux* v.

---

[1] A collateral order appeal may be available in some circumstances where the Executive Branch explicitly informs the court that ongoing litigation would implicate serious separation of powers concerns, such as foreign policy.

8

*Sudan*, 461 F.3d 461, 476 (4th Cir. 2006). The Court need not resolve defendants' political question arguments at this stage of the litigation.

### D. The Defendants' Claims Of Immunity Do Not Require Immediate Review.

Defendants also seek immediate review of their various claims to immunity. While some of those claims could present difficult questions, they do not suffice to create appellate jurisdiction at this stage of the case.

**1.** Some immunities encompass a freedom from the burdens of litigation altogether, not merely a right to avoid liability. Thus, the Supreme Court has described the doctrines of absolute official immunity and qualified immunity as sharing the essential attribute of "an entitlement not to stand trial under certain circumstances." *Mitchell* v. *Forsyth*, 472 U.S. 511, 525 (1985). But not all immunity considerations warrant interlocutory appeal. For example, a claim of qualified immunity – which is indisputably an immunity from trial – is not immediately appealable if it turns on questions of disputed fact. See *Johnson*, 515 U.S. at 313. And a number of courts have held that there ordinarily is no right to an interlocutory appeal from the denial of a defense based on federal sovereign immunity or derivative claims of such immunity. See, *e.g.*, *Houston Community Hosp.* v. *Blue Cross and Blue Shield of Texas, Inc.*, 481 F.3d 265, 279 (5th Cir. 2007); *Alaska* v. *United States*, 64 F.3d 1352, 1356 (9th Cir. 1995); *Pullman Constr. Indus.* v. *United States*, 23 F.3d 1166, 1168 (7th Cir. 1994).[2]

--------

[2] The Second Circuit has disagreed, in a case in which the United States did not participate. See *In re World Trade Center Disaster Site Litigation*, 521 F.3d 169, 191

The Fifth Circuit has recently noted the limited universe of immediately appealable claims, and emphasized that "almost any right can be characterized as a right not to be confronted with the burdens of trial."  See *Martin*, 618 F.3d at 483.  And the Supreme Court has emphasized that the final judgment rule "requires courts of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Digital Equipment*, 511 U.S. at 873.  Here, that cautionary guidance counsels against extending collateral order review at this stage of the litigation to the theories of derivative immunity and what defendants refer to as law-of-war immunity.

    **2.**    Defendants argue that they are entitled to absolute immunity on the ground that only the laws of war govern their conduct, and that plaintiffs' claims are therefore not amenable to judicial disposition in the courts of the United States.  They rest that argument principally on an 1879 Supreme Court decision denying enforcement of a default judgment entered against a Union general by a court in Louisiana for the taking of civilian property by the United States military during the Civil War.  See *Dow* v. *Johnson*, 100 U.S. 158 (1879).  The Court in *Dow* held that, during a period of war or military occupation, the armies of an occupying power are "not subject to [the] laws, nor amenable to [the] tribunals [of the occupied territory] for their acts." *Id.* at 165.  Thus, "a foreign army * * * is exempt from [the] civil and

_____

(2d Cir. 2008); *cf. Oscarson* v. *Office of the Senate Sergeant at Arms*, 550 F.3d 1, 3 (D.C. Cir. 2008) (noting conflicting authorities on whether federal sovereign immunity was immediately reviewable but declining to reach that question).  The question of the federal government's right to an interlocutory appeal is not directly presented in this case, has not previously been addressed by this Court, and need not be decided here.

criminal jurisdiction" of the "country it ha[s] invaded." *Ibid.* The officers and soldiers of the occupying army "remain subject to the laws of war, and are responsible for their conduct only to their own government, and the tribunals by which those laws are administered." *Id.* at 166.

The Court in *Dow* did not use the term "immunity" to describe its rationale for rejecting the default judgment in that case. The Court determined that the Louisiana court lacked jurisdiction over the Union officer, *Dow*, 100 U.S. at 167, and described the principle as a "doctrine of non-liability," *id.* at 169.

These cases also present different questions from those at issue in *Dow*. Defendants argue that the Supreme Court's jurisdictional determination concerning the courts of an occupied territory should extend as well to the domestic courts of the occupying force, the United States (even though it is unclear whether the reference in *Dow* to the proposition that officers and soldiers "are responsible for their conduct only to their own government" would allow suits by private parties in the courts of the United States). They argue that the freedom of a military officer to make decisions and give orders to subordinate officers and soldiers should be deemed also to protect the conduct of private contractors working with the military. And they argue that the jurisdictional holding in *Dow* should be understood to allow an appeal as of right from an interlocutory decision declining to dismiss these claims on the pleadings.

*Dow* and the policies it reflects may well inform the ultimate disposition of these claims. But we are not prepared at this point to conclude that the contractor

defendants have demonstrated a right to immediate review of their contentions based on *Dow* alone.

3.    Defendants also argue that they are entitled to derivative sovereign or official immunity, contending that they acted as agents of the United States.  But plaintiffs contest the premise of that argument, alleging that the conduct at issue exceeded the scope of defendants' contracts with the military.  The district courts here held that they could not yet rule on the claims of derivative immunity without additional information concerning the nature and scope of defendants' contractual duties on behalf of the government – including the contracts themselves, which are not in the record.  See *Al Shimari* v. *CACI Premier Technology, Inc.*, 657 F. Supp. 2d 700, 714, 720 (E.D. Va. 2009) (derivative official immunity); *Al-Quraishi* v. *Nakhla*, 728 F. Supp. 2d 702, 735 (D. Md. 2010) (derivative sovereign immunity).

The decisions of the district courts in these cases demonstrate that an interlocutory appeal to consider defendants' claims of derivative immunity is premature.  The district courts denied defendants' motions seeking dismissal not because immunity could never be available but because defendants' entitlement to immunity would depend on further discovery.  For that reason, the decisions here do not satisfy the requirement that an appealable collateral order must be conclusive.

4.    A claim of immunity must also be substantial – not merely colorable or non-frivolous – to justify interlocutory appeal.  See, *e.g.*, *Martin*, 618 F.3d at 483 (citing *Houston Community Hosp.*, 481 F.3d at 269 & n.11); *cf. Mitchell*, 472 U.S. at 525 ("the denial of a substantial claim of absolute immunity is an order appealable

12

before final judgment"); *McMahon* v. *Presidential Airways, Inc.*, 502 F.3d 1331, 1339 n.6 (11th Cir. 2007) ("A substantial claim to immunity from suit, not immunity itself, is the basis for a collateral order appeal.") (citing cases).[3]

This litigation is still at the pleadings stage, and the district courts have identified unresolved factual questions – including the scope of the defendants' contractual obligations – that may bear on at least some of the immunity claims.  See *Al-Quraishi*, 728 F. Supp. 2d at 715; *Al Shimari*, 657 F. Supp. 2d at 704-705. Defendants do not identify a substantial argument at this stage that they are entitled to immunity from *all* such claims as a matter of law.

## II.   IF THERE IS APPELLATE JURISDICTION, THE COURT SHOULD DIRECT THE DISTRICT COURTS TO RECONSIDER FEDERAL PREEMPTION INFORMED IN PART BY THE FTCA'S COMBATANT ACTIVITIES EXCEPTION.

If the Court were to conclude that it has jurisdiction over these appeals, it should hold that federal preemption principles generally apply to the acts of civilian contractors assisting the military in detaining and interrogating enemy aliens in a U.S. military prison in Iraq during wartime.  Given the unique federal interests at stake (and the relatively minimal state interests), the scope of federal preemption in this context should be broad but not limitless, and should not apply to conduct by civilian contractors that constitutes torture as defined in federal criminal law.

_____

[3] This Court has not addressed the showing required for immediate appeal of a denial of immunity.  The Court has referred in dicta to "an interlocutory appeal * * * made possible by the denial of a colorable claim of qualified immunity." *Wagner* v. *Wheeler*, 13 F.3d 86, 90 n.2 (4th Cir. 1993).  But that case did not decide whether an appeal should be dismissed for lack of jurisdiction where a claim of immunity is colorable but not substantial.

**A.**    The Supreme Court has recognized that preemption may be found not only where there is a discrete conflict that prevents compliance with both state and federal legal duties, but also where "the application of state law would 'frustrate specific objectives' of federal legislation" and where the federal interest requires a "uniform rule" that would supplant an "entire body of state law." *Boyle*, 487 U.S. at 507-508.    In *Boyle*, the Court found such a need for federal primacy where government contractors had been sued on products liability theories for the design of military equipment built for the United States.    The Court looked to the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), to discern the contours of that preemption.    *Boyle*, 487 U.S. at 511-512.

*Boyle* is the proper starting point for the preemption analysis in these cases. Here, as in *Boyle*, plaintiffs' claims implicate uniquely federal interests.    Those interests include avoiding unwarranted judicial second-guessing of sensitive judgments by military personnel and contractors with which they interact in combat-related activities, and ensuring appropriate limits on private tort suits based on such activities – as well as ensuring that military detention operations are conducted in a manner consistent with humane treatment obligations and the laws of war, and that contractors are held accountable for their conduct by appropriate means. Except in limited instances where the federal interests at stake also include the prohibition against torture, those interests clearly outweigh whatever interests the States might have in regulating contractors through the mechanism of tort claims by

14

foreign nationals seeking redress for injuries allegedly sustained during their detention by the United States military overseas.

The conduct of military combat operations, including the use of contractors in support of those operations, is the province of the federal government, and the detention and interrogation of enemy aliens captured in the course of those military operations is indisputably a matter of federal concern. The FTCA's combatant activities exception, 28 U.S.C. § 2680(j), provides helpful guidance in determining the scope of federal preemption in this area. The Supreme Court recognized in *Boyle* that the FTCA's discretionary function exception "demonstrates the potential for, and suggests the outlines of, 'significant conflict' between federal interests and state law in the context of Government procurement." *Boyle*, 487 U.S. at 511. So too in the context of military operations, the corollary exception for "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war," 28 U.S.C. 2680(j), identifies the area of significant federal interest that governs such claims.

The D.C. Circuit, faced with similar claims, recognized and applied a federal preemption defense informed by the FTCA's combatant activities exception. See *Saleh*, 580 F.3d at 5-11. That approach is generally consistent with the Supreme Court's decision in *Boyle*. *Boyle* makes clear that a state-law claim against a government contractor may be preempted insofar as it conflicts with significant federal interests, and that the contours of the preemption may be informed by the FTCA's discretionary function exception, even though that statute does not directly

15

apply to the actions of private contractors or render the United States liable for their actions. See 28 U.S.C. § 2671. Similarly, although the FTCA's combatant activities exception is directly triggered only by the actions of the United States military, *Saleh* correctly determined that the policies embodied in that exception can also be implicated by the actions of contractor employees who are integrated with U.S. personnel in connection with the combatant activities of the military.[4]  As *Saleh* recognized, in both situations a state-law tort suit raises "the prospect of military personnel being haled into lengthy and distracting court or deposition proceedings" and "extensive judicial probing of the government's wartime policies." 580 F.3d at 8.

The D.C. Circuit, however, erred in a crucial respect by inquiring whether the contractor was itself "engaging in combatant activities" or was "integrated into combatant activities." *Saleh*, 580 F.3d at 7, 9. In phrasing the test in this manner, the court may have misunderstood the circumscribed role of private contractors in war zones. Under domestic and international law, civilian contractors engaged in authorized activity are not "combatants"; they are rather civilians accompanying the force and, as such, they cannot lawfully engage in combat functions or combat operations, which are uniquely sovereign functions. See Br. For United States as

---

[4] We do not address the situation where contractors of other agencies, such as the State Department, are not directly integrated into the military's combat functions, even if they are ultimately acting in support of a military mission.

16

Amicus Curiae, *Saleh* v. *Titan Corp.*, at 15-16 (S. Ct. No. 09-1313, May 27, 2011).[5] The panel here may have also failed to recognize the significance of this distinction. See *Al Shimari* v. *CACI Int'l, Inc.*, 658 F.3d 413, 420 (4th Cir. 2011), vacated on reh'g en banc (4th Cir. Nov. 8, 2011).

Application of the FTCA's combatant activities exception, however, does not turn on whether a challenged act is itself a "combatant activity," or whether the alleged tortfeasor is himself engaging in a "combatant activity."  The statute instead refers to claims "*arising out of* the combatant activities *of the military* or naval forces, or the Coast Guard, during time of war."  28 U.S.C. § 2680(j) (emphases added).  Such claims, if brought against the United States (or if brought against a military service member or other federal officer or employee acting within the scope of his or her employment), would be dismissed because Congress expressly retained the sovereign immunity of the United States for claims arising out of combatant activities.  The scope of preemption informed by that statute's expression of a uniquely federal interest should likewise turn on whether particular claims "aris[e] out of" the military's combatant activities.

**B.**    For the purpose of these cases, the Court should hold that claims against a contractor are generally preempted to the extent that a similar claim against the United States would be within the combatant activities exception of the FTCA, and

---

[5] International law also recognizes that civilians authorized to accompany the force in order to provide support are entitled to certain status and protections, as specified, for example, in the Geneva Conventions, but are not generally treated as combatants.

the contractor was acting within the scope of its contractual relationship with the federal government at the time of the incident out of which the claim arose, particularly in situations where the contractor was integrated with military personnel in the performance of the military's combat-related activities. *Cf. Saleh*, 580 F.3d at 4-7 (discussing integration of contractor personnel into military units). Even if all these factors exist, however, state-law claims should not be preempted in these cases to the extent that a contractor committed torture as defined by federal law.

1.    The first step of this preemption inquiry requires the Court to determine whether claims against the United States alleging similar conduct would be within the FTCA's exception for combatant activities. The FTCA specifies that the sovereign immunity of the United States has not been waived as to claims arising out of the military's combatant activities. Thus, the Court must determine whether plaintiffs' claims arise out of underlying conduct of the military that qualifies as "combatant activities * * * during time of war." 28 U.S.C. § 2680(j). The Ninth Circuit held, shortly after enactment of the FTCA, that the term "combatant activities" includes "not only physical violence, but activities both necessary to and in direct connection with actual hostilities." *Johnson* v. *United States*, 170 F.2d 767, 770 (9th Cir. 1948), quoted in *Koohi* v. *United States*, 976 F.2d 1328, 1333 n.5 (9th Cir. 1992). That court has also recognized that the statutory reference to "time of war," 28 U.S.C. § 2680(j), does not require a congressional declaration of war. *Koohi*, 976 F.3d at 1333-1334. No other court of appeals has addressed the interpretation of the combatant activities exception, although district court decisions are generally consistent with the Ninth

18

Circuit's standard in *Johnson* and *Koohi*. See Construction and Application of Combatant Activities Exception to Federal Tort Claims Act, 23 A.L.R. Fed. 2d 489 (2007).

Moreover, the statute's reference to claims "arising out of" the military's combatant activities is purposefully broad. The relevant inquiry is not whether the plaintiffs' claim includes some non-combatant element, but (at a minimum) whether the conduct giving rise to the cause of action has its foundation in combatant activities of the U.S. armed forces. See, *e.g.*, *Saleh*, 580 F.3d at 6 ("The arising-out-of test is a familiar one used in workmen's compensation statutes to denote *any* causal connection between the term of employment and the injury."); *Kosak* v. *United States*, 465 U.S. 848, 854 (1984) (interpreting "arising in respect of" in 28 U.S.C. § 2680(c) as equivalent to "arising out of" and as an "encompassing phrase" that "seems to sweep within the exception all injuries associated in any way with the 'detention' of goods.").

    **2.**    If similar claims against the United States would be within the combatant activities exception, the Court should next inquire whether the contractor defendant is entitled to invoke the preemption defense. This aspect of federal preemption requires the adoption of an appropriate federal common-law standard to determine whether the contractor was acting within the scope of its contractual relationship with the federal government at the time of the incident out of which the claim arose. The "scope of the contractual relationship" standard is similar to both the Westfall Act's familiar inquiry into the scope of employment, 28 U.S.C. § 2679(d)(1),(2) (claims are

deemed to arise against the United States where a federal employee is sued even for wrongful or negligent conduct, if employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose"), and to an earlier standard governing the immunity of federal employees, see *Barr* v. *Matteo*, 360 U.S. 564 (1959) (plurality opinion) ("The fact that the action here taken was within the outer perimeter of [the employee's] line of duty is enough to render the privilege applicable, despite the allegations of malice in the complaint.").

Thus, state-law tort claims would generally be preempted if the alleged conduct occurred within the outer perimeter of the contractual duties relationship between the contractor and the federal government – that is, in these cases, if the conduct was undertaken within the course of the contractors' work providing the interrogation and interpretation services contracted for by the United States. Under this approach, federal preemption would generally apply even if an employee of a contractor allegedly violated the terms of the contract or took steps not specifically called for in the contract, as long as the alleged conduct at issue was within the scope of the contractual relationship between the contractor and the federal government. But preemption would not apply to conduct of a contractor employee that is unrelated to the contractor's duties under the government contract. Thus, just as a federal employee would not be immune (under *Barr* or the Westfall Act) for tortious conduct while off-duty or for other conduct of a personal or private nature, so too federal preemption would not apply where the conduct giving rise to a plaintiff's claims is beyond the scope of the contractual relationship.

20

**3.**    To be clear, neither *Barr* immunity nor the Westfall Act directly applies here.  Rather, the standards employed in those contexts simply provide useful analogies for courts to use in determining whether preemption is appropriate by identifying whether the plaintiffs' claims – and the allegations of tortious conduct on which they rest – implicate the federal interests giving rise to preemption.  In the government-employee context, *Barr* itself has been largely superseded by the Westfall Act, and that statute applies by its terms only to federal employees, not to government contractors.[6]

Moreover, the preemption analysis under *Boyle* and *Saleh* is not equivalent to the immunity conferred on federal employees by the Westfall Act or by *Barr*.  Indeed, the Supreme Court in *Boyle* made clear that its preemption decision was distinct from such immunity:  "We cite [*Barr* and other] cases merely to demonstrate that the liability of independent contractors performing work for the Federal Government, like the liability of federal officials, is an area of uniquely federal interest."  *Boyle*, 487 U.S. at 505 n.1 (immunity issue "is not before us").  Rather, the standard we propose – based on whether the conduct alleged in the complaint occurred within the scope

---

[6] There is thus no occasion here to apply the additional requirement, articulated by the Supreme Court in *Westfall* v. *Erwin*, 484 U.S. 292 (1988), but promptly superseded by the Westfall Act, that federal employees further demonstrate that their conduct constituted the exercise of discretion.  For the same reasons, the procedural mechanisms established by the Westfall Act (including the presumptions and burden shifting arising from the Attorney General's certification) do not apply in this context. Nor, of course, would a finding of preemption lead to a substitution of the United States as a defendant, as under the Westfall Act.  Finally, the standard we propose is grounded in federal law, and there is accordingly no need (as in Westfall Act cases) to ascertain scope of employment under the law of any particular State.

21

of the contractual relationship between the contractor and the federal government –
provides a distinct, though similar, inquiry for courts to determine whether
preemption is appropriate by identifying whether the plaintiffs' claims implicate the
federal interests giving rise to preemption.

      **C.**     In most cases, the federal preemption principles articulated above further
the government's significant federal interests in this unique and sensitive context.
But in the limited circumstances where the state law claim is based on allegations that
the contractor committed torture, as defined in 18 U.S.C. § 2340, courts should take
into account the strong federal interests embodied in that federal law. In these
circumstances, the federal interests in ensuring that a contractor's involvement in
detention operations is conducted in a manner consistent with that prohibition, and
in providing a basis for holding the contractor accountable for its conduct, must also
weigh in the balance.

      Even in the absence of state tort law, monetary compensation may be available
– through the Foreign Claims Act (FCA), an administrative regime established by
Congress – to individual detainees who were subjected to abuse and mistreatment.
See 10 U.S.C. § 2734. Moreover, in the wake of Abu Ghraib, the United States now
has at its disposal a variety of tools to punish the perpetrators of acts of torture, and
to prevent acts of abuse and mistreatment. In addition to the criminal prohibition
against torture, other criminal and contractual remedies are also available to punish
wrongdoers. See, *e.g.*, 18 U.S.C. § 3261(a)(1); 10 U.S.C. § 802(a)(10). The United
States Government also has taken a number of steps to improve contractor oversight,

see, *e.g.*, Congressional Research Service, Department of Defense Contractors in Afghanistan & Iraq: Background & Analysis 18-19 (Mar. 29, 2011), and Congress has now expressly barred civilian contractors from performing interrogation functions, and has required private translators involved in interrogation operations to undergo substantial training and to be subject to substantial oversight. See Pub. L. No. 111-84, § 1038, 123 Stat. 2451; 75 Fed. Reg. 67,632 (Nov. 3, 2010).

And even where torture is alleged, the federal interests in avoiding judicial second-guessing of sensitive military judgments and intrusive discovery are still weighty, and the state interests in providing a tort-law remedy against civilian contractors for enemy aliens in U.S. military prison during wartime remain limited.[7] But at the time of the events at Abu Ghraib, the enhanced tools to hold contractors accountable had not yet been adopted, and the balance of federal interests in this case therefore ultimately weighs in favor of allowing a state-law tort claim to proceed to the extent a civilian contractor actually engaged in torture in violation of federal law. There is no need for the Court to consider whether state-law tort remedies would continue to be available in light of measures subsequently instituted by Congress and the Executive Branch, and other developments in the aftermath of Abu Ghraib.[8]

---

[7] Among other limitations, it is well established that no suit could be brought on behalf of an enemy alien who remains in detention abroad. See *Johnson* v. *Eisentrager*, 339 U.S. 763, 776-777 (1950).

[8] The exception from preemption we have outlined is limited to the defense of federal preemption for claims against civilian contractors that are within the § 2340 definition of torture. No such exception would apply to cases brought against current or former federal officials or employees, who are entitled to the absolute statutory immunity enacted by Congress in the Westfall Act, which results in substitution of

**D.**     Applying those principles here, the first step of the preemption analysis is readily satisfied.  The detention and interrogation of enemy aliens captured in and around a battlefield or war zone plainly arise out of the military's combatant activities.  "The capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war.'"  *Hamdi* v. *Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality) (quoting *Ex parte Quirin*, 317 U.S. 1, 28, 30 (1942)); see also *Munaf* v. *Geren*, 553 U.S. 674, 700 (2008) (recognizing that judicial interference into military detention policies in wartime Iraq would raise "concerns about unwarranted judicial intrusion into the Executive's ability to conduct military operations abroad").

Turning to the second step, the allegations in the complaints are vague and the operative contracts are not in the record.  For present purposes, however, we assume that the contractor employees were to work together with service members in the military prisons in Iraq, combining their efforts to conduct the interrogation of plaintiffs and other enemy aliens.  The district courts on remand should clarify the

---

the United States as a defendant.  See, *e.g.*, *Ali* v. *Rumsfeld*, 649 F.3d 762, 774-775 (citing *Rasul* v. *Myers*, 512 F.3d 644, 654-61 (D.C. Cir. 2008), cert. granted, vacated, and remanded on other grounds, 555 U.S. 1083 (2008), reinstated in relevant part, 563 F.3d 527, 528-529 (D.C. Cir. 2009)).  That difference is appropriate, in the circumstances of these cases, in light of the greater accountability of federal employees – who are subject to administrative discipline (whether within the military or the civilian employment system), as well as criminal penalties.  As explained above, the government (both through legislation and administrative action) has expanded the contract oversight and the contractual and criminal remedies available to hold contractors accountable in recent years, in part specifically to address concerns arising from the incidents at Abu Ghraib.  Those expanded safeguards and measures for accountability may well limit the applicability of the exception to preemption we outline here.

24

allegations, examine the contracts, and analyze the scope of the contractual relationship in accordance with the principles articulated above.  Following those undertakings, the contractors may well have a strong argument that they were acting within the scope of their contractual relationship with the United States, for purposes of this specialized legal analysis, at the time of the conduct alleged in the complaint. Notably, the D.C. Circuit has held that federal employees and officials were acting within the scope of their employment when faced with claims of torture in a case concerning military detention and interrogation policies.  See, e.g., *Ali* v. *Rumsfeld*, 649 F.3d 762, 774-775 (D.C. Cir. 2011).  In these circumstances, moreover, there are other measures under which military personnel may be held accountable, through military discipline and applicable criminal sanctions.[9]

The fact that the complaints in these cases also include allegations that defendants exceeded or violated their contractual obligations to the United States would not preclude a finding that the alleged actions were within the scope of the contractual relationship.  Similarly, the inquiry is unaffected by plaintiffs' allegations that the conduct at issue violated approved interrogation techniques or other military directives, or was otherwise unlawful.  Measures to be taken in response to such

---

[9] The same considerations of a comprehensive system of discipline and control, and the strong interests in not discouraging people from entering military service and not distracting military personnel or rendering them unduly cautious on the battlefield for fear that they would be subject to suits for personal liability in damages actions, likewise compel the conclusion that no *Bivens* remedy should be created against governmental personnel in this setting.  See *Lebron* v. *Rumsfeld*, 4th Cir. No. 11-6480 (oral argument held Oct. 26, 2011) (putative *Bivens* claim against Secretary of Defense and high-level military officers concerning detention in domestic setting).

improper contractor actions – such as contractual remedies or criminal sanctions – are ordinarily for the federal government in the first instance.

Finally, in addition to applying the scope of the contractual relationship analysis, the district courts will need to determine the extent to which the allegations constitute torture within the definition set forth in the federal criminal statute. The parties have had no occasion to address, nor the district courts to decide, whether the conduct at issue would constitute torture under 18 U.S.C. § 2340, and the parties understandably did not plead their case in those terms. If plaintiffs can show that the contractor defendants committed torture as defined in that statute, there should be no preemption of state tort law claims seeking redress for such conduct in the circumstances of this case.

E.    The parties have not addressed how the standard we propose would apply to plaintiffs' allegations, and they should have an opportunity to do so before the district courts. Some factual development will likely be required on remand, limited to the federal preemption defense as articulated above. The district court should carefully superintend the discovery process to ensure that military prerogatives are protected. Although the government believes that appropriate case-management techniques can protect the Nation's vital interests in having a military capable of conducting combat operations without undue judicial interference, if experience demonstrates otherwise, the United States will reconsider its position.

## CONCLUSION

For the foregoing reasons, the appeals should be dismissed for lack of jurisdiction.

Respectfully submitted,

TONY WEST
  *Assistant Attorney General*

 /s/ H. Thomas Byron III
MICHAEL S. RAAB
  (202) 514-4053
H. THOMAS BYRON III
  (202) 616-5367
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7260*
  *Department of Justice*
  *950 Pennsylvania Avenue, N.W.*
  *Washington, D.C.  20530-0001*

JANUARY 2012

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. _09-1335_          **Caption:** _Al Shimari v. CACI Int'l. Inc._

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

_[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]_

   ☑   this brief contains _6,976_____ [_state the number of_] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), _or_

   ☐   this brief uses a monospaced typeface and contains _____ [_state the number of_] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

_[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]_

   ☐   this brief has been prepared in a proportionally spaced typeface using _WordPerfect X5_ [_state name and version of word processing program_] in _Times New Roman 14 point_ [_state font size and name of the type style_]; _or_

   ☐   this brief has been prepared in a monospaced typeface using _____ _____ [_state name and version of word processing program_] with _____ _____ [_state number of characters per inch and name of type style_].

(s) H. Thomas Byron III_____

Attorney for _Amicus Curiae United States_

Dated: _1/13/12_____

# CERTIFICATE OF SERVICE

I certify that on ___January 13, 2012___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ H. Thomas Byron III

_____

Signature

January 13, 2012

_____

Date